STATE OF NORTH CAROLINA v. WILLIAM TELL JOHNSON

No. 7310SC459

(Filed 11 July 1973)

1. Criminal Law § 43— video tape — admissible as other photographic evidence

    A video tape recording of sight and sound taken by means of a closed circuit television camera is a motion picture admissbile under the rules and for the purposes of any other photographic evidence.

2. Criminal Law § 43— observation through closed circuit TV — admissibility of video tape for illustration

    Where three witnesses watched on a closed circuit television monitor as defendant approached and made contact six times with a desk on which a billfold containing fifteen dollars lay, the video tape of the events was admissible for the purpose of illustration in a prosecution charging defendant with larceny, even though the witnesses did not observe the events with the naked eye.

APPEAL by defendant from *Blount, Judge,* First January 1973 Special Criminal Session of WAKE County Superior Court.

Defendant was convicted in District Court of larceny of property of the value of not more than two hundred dollars, a misdemeanor in violation of G.S. 14-72(a). Defendant was sentenced to imprisonment for four months. He appealed and was tried *de novo* in the superior court. Upon a finding of guilty by

the jury, defendant was sentenced to imprisonment for eighteen to twenty-four months.

*Attorney General Robert Morgan by Assistant Attorney General William F. O'Connell for the State.*

*T. Dewey Mooring, Jr. for defendant appellant.*

CAMPBELL, Judge.

Defendant was employed by Occidental Life Insurance Company as a mail supply clerk. On the afternoon of 10 October 1971 Mr. Carl S. Biathrow mounted a closed circuit television camera in the ceiling of the third floor hallway of the building in which Occidental Life Insurance Company is located. He aimed the camera toward a desk in the hallway, and connected it by electrical cable to a television monitor in an adjoining room. The TV camera was also connected to a magnetic tape recorder which was capable of recording both sound and vision.

Biathrow testified that he had had about two hours' instruction on the use and operation of the video tape equipment; that he focused the camera lens to give a clear and accurate picture of the desk and surrounding area on the TV monitor screen; and that the video tape is capable of and did in fact accurately record a true picture of that part of the hallway which he observed, and all activity of people within the view of the camera.

On the morning of 11 October 1971 Biathrow placed a billfold on the desk which contained a five dollar bill and one ten dollar bill, part of each bill extending from the billford. He recorded the serial numbers of the two bills on a piece of paper which he kept in his possession. At about 11:00 a.m. he went into the room in which the monitor and tape were located and switched on the video tape machinery. At that time he was receiving a clear and accurate picture of the hallway and desk. Mrs. Betty Jo Spivey was standing at the desk when Biathrow went into the monitor room; he saw her on the screen. She then joined him in the monitor room, and the two of them were later joined by Mr. Billy Hare, defendant's immediate supervisor. Both Hare and Biathrow planned the surveillance for a morning on which they knew that defendant would be delivering mail to the third floor desk.

The witnesses watched the TV monitor screen from about 11:00 a.m. until 11:30 a.m. They saw four persons enter the

field of vision: two secretaries who worked on the third floor walked quickly across the picture and did not approach the desk; Mrs. Linda Perry entered the picture twice, and approached the desk one time; the defendant, William Tell Johnson, entered the picture about six times, and "made contact with the desk either four or five times. By making contact, I mean that he was touching either the desk or something on it."

Biathrow watched Mrs. Spivey return to her desk. He then switched off the camera and recorder and went to the desk. The money was no longer in the billford. About one hour after the filming, the tape was shown to defendant and he identified himself in the picture. He explained that he was receiving and delivering the mail at the desk. Johnson was searched, but the money was not found on his person; his automobile was also searched, but no money was discovered.

On 11 February 1972 the two bills were found hidden behind boxes in the supply room where defendant worked.

The video tape film was admitted into evidence to explain or illustrate the testimony of the witnesses, and was shown to the jury.

Defendant contends that since the witnesses did not view any of the events with the naked eye, but were able to see only by means of the television camera, therefore they were not actually witnesses, and the video tape could not be used to illustrate their testimony.

[1] A motion picture is admissible in evidence to explain or illustrate the testimony of witnesses. *State v. Strickland,* 276 N.C. 253, 173 S.E. 2d 129 (1970). A video tape recording of sight and sound taken by means of a closed circuit television camera is a motion picture. *People v. Heading,* 39 Mich. App. 126, 197 N.W. 2d 325 (1972). The video tape should be admissible under the rules and for the purposes, then, of any other photographic evidence.

In the instant case there was testimony that the video tape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area "photographed." A proper foundation was made for its admission.

[2] The witnesses, however, did not observe the events recorded with the naked eye. We feel that such is not a prerequisite to the admission of the video tape. The witnesses actually ob-

State v. Johnson

served a factual event at the time it was actually taking place. The mechanical or electrical device by which they were enabled to view is of no consequence so long as it is accurate. We are not constrained to believe that a sequence of events in fact did not occur simply because the only witnesses to that event saw it on television. With respect to the "naked eye" requirement, compare the language of *Williams v. State*, 461 S.W. 2d 614 (Tex. Crim. App. 1971), in which a camera recorded the crime simultaneously while the victim saw with his naked eye that he was being robbed.

The situation in the instant case is analogous to that of the physician testifying as an expert with respect to the subject of an X-ray photograph, which photograph is admissible. *Branch v. Gurley*, 267 N.C. 44, 147 S.E. 2d 587 (1966). The eyes of the physician-witness did not penetrate the flesh of the patient to see the bones within, yet the X-ray photograph of that bone structure is admissible to illustrate his testimony of what he saw *by means of the X-ray itself*.

We feel that in the instant case the video tape was properly admitted, and the jury was properly instructed as to its limited use for illustration of oral testimony of the witnesses.

It has been held in North Carolina that a photographic reconstruction of the crime is inadmissible. *State v. Matthews*, 191 N.C. 378, 131 S.E. 743 (1926). "But where the motion picture is taken *without artificial reconstruction*, i.e., at the time and place of the actual event (a possibility not infrequent), it lacks the above element of weakness [i.e., the risk of misleading] and is entitled to be admitted on the same principles as still photographs." 3 Wigmore, Evidence, § 798a, p. 260 (Chadbourn Rev. 1970).

No error.

Judges BRITT and BALEY concur.