STATE OF NORTH CAROLINA v. CORNELIUS CANNON AND DAVID LEE REDMOND (REDMAN)

No. 888SC342

(Filed 20 December 1988)

1. **Criminal Law § 138.7— defendants' refusal to plead guilty—court's statement about sentence—sentence based on aggravating factors**

Defendants were not entitled to a new trial or to a new sentencing hearing in an armed robbery case because of the trial court's statement, made to defense counsel after learning that defendants had refused to plea bargain and intended to go to trial, that "They've been put on notice and I hope that both of you gentlemen have indicated to your clients what I have indicated to you would be the penalty in the event of a conviction in this case," where the trial court imposed sentences in· excess of the presumptive term based upon its findings of aggravating and mitigating factors and its determination that each defendant's aggravating factors outweighed his mitigating factors.

2. **Constitutional Law § 60; Jury § 7.14— peremptory challenges of black jurors— showing of nondiscriminatory purpose**

The trial court did not err in finding that the State's explanations for its peremptory challenges of six prospective black jurors were sufficient to rebut any prima facie showing of purposeful discrimination so that the peremptory challenges did not violate defendants' rights under either the federal or state constitutions where the State's explanations connected five challenged veniremen or members of their families to a defendant, a member of defendant's family, or a State's witness, and the State explained that the sixth challenged juror could not be impartial to the State because he had recently been fined for a traffic violation for which he said he was innocent; the record does not reflect that the prosecutor made any comments indicating a purpose to discriminate; and the record does not show the racial composition of the jury venire or the jury that convicted defendants.

3. **Criminal Law § 66.20— in-court identification—denial of motion to suppress— sufficiency of evidence and findings**

The evidence at a voir dire hearing supported the trial court's findings, and the findings supported the court's order denying one defendant's motion to suppress an in-court identification on the ground that it was tainted by impermissibly suggestive pretrial procedures.

4. **Criminal Law § 43.5— videotape—foundation for admission**

A proper foundation for the admission of a videotape may be shown by: (1) testimony that the videotape fairly and accurately illustrates the events filmed; (2) proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape; (3) testimony that the pictures introduced at trial were the same as those the witness had inspected immediately after processing; or (4) testimony that the videotape had not been edited and that the picture fairly and accurately recorded the actual appearance of the area videotaped.

State v. Cannon

**5. Criminal Law § 43.5— videotape—foundation for admission**

   A proper foundation was laid for the admission of a videotape of an armed robbery for either substantive or illustrative purposes where a victim testified that the business that was robbed had installed the camera approximately six weeks before the robbery and that the camera was working properly before and after the night of the robbery, and a detective testified that he had exclusive care and custody of the video film since the night of the robbery.

**6. Criminal Law § 43.5— videotape—limiting instruction not required**

   The trial court did not err in failing to give an instruction limiting the jury's consideration of a videotape to illustrative purposes where the State laid a proper foundation for admission of the videotape for either substantive or illustrative purposes.

**7. Robbery § 4.3— armed robbery—defendant as perpetrator**

   The State's evidence was sufficient for the jury to find that defendant was one of two armed men who robbed a cafe where it tended to show that defendant was found hiding beneath a house in the area to which the robbers ran; defendant matched the description of one of the robbers and was in the company of a codefendant who was positively identified by a victim as one of the robbers; and officers found various items beneath and around the house which were linked to the robbery, including flowered shorts and a silk-type shirt with holes cut in them, two pairs of tennis shoes, a pocketknife, and $305.00.

   Judge JOHNSON concurring in part and dissenting in part.

APPEAL by defendants from *Llewellyn, Judge.* Judgments entered 17 December 1987 in Superior Court, LENOIR County. Heard in the Court of Appeals 26 October 1988.

   This is a criminal action wherein defendants were charged in proper bills of indictment with the armed robbery of Kim Stocks, Sadina Hall, William Coward and Ralph Uzzell of $350.00. The evidence at trial tends to show that on 1 September 1987, at about 12:15 a.m., two black males entered the Lunch Box Cafe in Kinston. One man wore blue jeans, no shirt, a silk shirt wrapped around his head and face and was carrying a .22 calibre rifle. The second man wore brown pants, tennis shoes, no shirt, a flowered cloth wrapped around his head and face and was carrying a knife. As the men came into the cafe, Kimberly Stocks, the manager, triggered a silent alarm. The man with the knife stood directly over Stocks, who had dropped to the floor. The first man pointed his gun at the safe, then at Stocks and directed her to open the safe. She indicated that the safe was locked. The two cash registers were opened, and the man with the knife took most of the bills out of Stocks' register. The man with the gun took the re-

mainder of the bills from her register. The two men left the premises. Immediately after the robbery, Stocks estimated the registers had contained $350.00. A count at shift's end indicated that $307.00 had been taken. A deputy sheriff and a police officer arrived soon after the men left. Stocks gave the deputy a description of the two men, and a witness told him the two men were headed toward Caswell Street. Stocks identified the man with the gun as "Nick," a regular customer at the Lunch Box. Officers found defendants hiding beneath a house located at 506 East Caswell Street. Defendant Redmond was wearing brown pants and no shirt. Defendant Cannon wore blue jeans and no shirt. Officers found a pair of flowered shorts with holes in them, one pair of tennis shoes, a pocketknife, and $305.00 in U.S. currency beneath the house. A burgundy silk-type shirt with holes in it was found in the driveway beside the residence.

Defendants were found guilty of armed robbery in violation of G.S. 14-87. From judgments imposing sentences of 35 and 30 years respectively, defendants Cannon and Redmond appealed.

*Attorney General Lacy H. Thornburg, by Special Deputy Attorney General Robert G. Webb, and Associate Attorney General E. Burke Haywood, for the State.*

*Assistant Appellate Defender Teresa A. McHugh for defendant, appellant Cannon.*

*William D. Spence for defendant, appellant Redmond.*

HEDRICK, Chief Judge.

[1] Defendants Cannon and Redmond both assign error to the "[t]rial court's determination before trial and before the sentencing hearing of the sentence to be imposed upon defendant[s] in the event of a conviction, on the grounds that such determination was grossly improper and violated defendants' right to due process under the North Carolina Constitution and N.C. Gen. Stat. 15A-1340.3, 1340.4." The record indicates defendants' attorneys and the prosecutor had discussed plea bargains, but that the defendants refused to bargain and insisted on pleading not guilty, whereupon the trial judge made the following statement to the attorneys: "They've been put on notice and I hope that both of you gentlemen have indicated to your clients what I have indicated to

you would be the penalty in the event of a conviction in this case." Citing *State v. Boone*, 293 N.C. 702, 239 S.E. 2d 459 (1977), defendants seem to argue they are entitled to new sentencing hearings because the judge determined before the trial what the sentences would be. In *Boone*, the record disclosed that the sentence imposed by the trial judge was in part induced by defendant's decision to plead not guilty and to demand a jury trial. The Supreme Court remanded the case for a resentencing hearing and, quoting the Court of Appeals, stated that "[t]he trial judge may have sentenced defendant quite fairly in the case at bar, but there is a clear inference that a greater sentence was imposed because defendant did not accept a lesser plea proffered by the State." *Id.* at 712, 239 S.E. 2d at 465.

While the judge's statement set out in the record may have been inappropriate, we do not award defendants a new trial or a resentencing hearing. The events at the trial in the present case may bear some similarity to the factual situation in *Boone*, but in our opinion, *Boone* has no application here because it was decided before the Fair Sentencing Act took effect. Appellate review of sentences imposed under the Fair Sentencing Act differs from review of pre-Fair Sentencing Act sentences.

G.S. 15A-1444(a1) states:

A defendant . . . is entitled to appeal as a matter of right the issue of whether his sentence is supported by evidence introduced at the trial and sentencing hearing only if the prison term of the sentence exceeds the presumptive term . . . and if the judge was required to make findings as to aggravating or mitigating factors. . . .

Under the Fair Sentencing Act, the trial judge is required to make a record of aggravating and mitigating factors. This gives the reviewing court a means by which to decide whether the sentence is supported by sufficient evidence and whether the judge abused his discretion in weighing aggravating and mitigating factors. Pre-Fair Sentencing Act sentences were reviewed without the benefit of such a record. The following standard of review applied to a trial judge's determination of sentence:

There is a presumption that the judgment of a court is valid and just. The burden is upon appellant to show error

amounting to a denial of some substantial right. A judgment will not be disturbed because of sentencing procedures unless there is a showing of abuse of discretion, procedural conduct prejudicial to defendant, circumstances which manifest inherent unfairness and injustice, or conduct which offends the public sense of fair play. (Citations omitted.)

*State v. Pope*, 257 N.C. 326, 335, 126 S.E. 2d 126, 133 (1962).

In *Boone*, once the reviewing court decided that the judge considered improper matter in determining the sentence, it had little choice but to remand for a resentencing hearing. There was no record from which to evaluate the basis for the sentence imposed. Here, the circumstances are different and do not compel the same result. Following the jury's verdict of guilty, the trial judge considered each defendant's aggravating and mitigating factors. Upon finding that each defendant's aggravating factors outweighed his mitigating factors, the judge imposed sentences in excess of the presumptive term. Defendants have shown no abuse of discretion. These assignments of error have no merit.

[2] Defendants assign error to "[t]he exclusion of six (6) black jurors from the jury on the grounds that the court implicitly found the exclusions to be prima facie evidence of a violation of defendant's right to equal protection and the state failed to rebut the prima facie showing; alternatively on the grounds that the exclusions were in fact prima facie evidence of a violation of defendant's right to equal protection." During jury selection, the State exercised a total of six peremptory challenges to members of the jury panel. Each of the six peremptory challenges was used to dismiss a black person. Defendants objected to the State's use of peremptory challenges, arguing that they were denied the right "to have [their] case heard by a representative cross section of the community." The trial judge overruled defendants' objections.

In their briefs, defendants argue they are entitled to a new trial because the State's use of peremptory challenges violated their constitutional right to equal protection of the laws as set out in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.E. 2d 69 (1986) and *State v. Jackson*, 322 N.C. 251, 368 S.E. 2d 838 (1988).

Our Supreme Court in *Jackson* stated:

In *Batson v. Kentucky* . . . the United States Supreme Court overruled *Swain v. Alabama*, 380 U.S. 202, 85 S.Ct. 824, 13 L.Ed. 2d 759 (1965), and held a prima facie case of purposeful discrimination in the selection of a petit jury may be established on evidence concerning the prosecutor's exercise of peremptory challenges at the trial. In order to establish such a prima facie case the defendant must be a member of a cognizable racial group and he must show the prosecutor has used peremptory challenges to remove from the jury members of the defendant's race. The trial court must consider this fact as well as all relevant circumstances in determining whether a prima facie case of discrimination has been created. When the trial court determines that a prima facie case has been made, the prosecution must articulate legitimate reasons which are clear and reasonably specific and related to the particular case to be tried which give a neutral explanation for challenging jurors of the cognizable group. The prosecutor's explanation need not rise to the level of justifying a challenge for cause. At this point the trial court must determine if the defendant has established purposeful discrimination. Since the trial court's findings will depend on credibility, a reviewing court should give those findings great deference. (Citations omitted.)

*Id.* at 254-55, 368 S.E. 2d at 839-840.

Defendant Cannon also argues in his brief that he is entitled to a new trial because the State's use of peremptory challenges violated his rights under Article I, Section 26 of the North Carolina Constitution which states that "[n]o person shall be excluded from jury service on account of sex, race, color, religion, or national origin." In *Jackson v. Housing Authority of High Point*, 321 N.C. 584, 364 S.E. 2d 416 (1988), our Supreme Court held that this provision of the State Constitution prohibits the use of peremptory challenges to exclude jurors on the basis of race.

We note at the outset that defendants have provided only a minimal record for review. The transcript shows the defendants' objections to the State's peremptory challenges to six black veniremen and the State's explanations for those challenges.

However, we do not know the racial composition of either the jury venire or the jury that tried and convicted the defendants, nor do we have a transcript of the jury voir dire. The record before us shows that following the State's peremptory challenge to three black veniremen, defendants objected, and without any request from the court, the State offered explanations for dismissing those three veniremen. There is nothing in the record to indicate that the judge found that defendants had made the prima facie showing of purposeful discrimination as to those three veniremen. Following the State's peremptory challenge to three additional black veniremen, defendants again objected, and at this point the court directed the State to explain its reasons for those three dismissals.

Defendants argue that the State's explanations for its use of peremptory challenges are insufficient to rebut the presumption of purposeful discrimination. Defendant Redmond merely argues that all the State's explanations were "frivolous and did not show a non-discriminatory motive." Defendant Cannon contends these explanations were a pretext "to eliminate anyone who regularly walks the streets of the black community, that is, all black persons."

The trial court overruled defendants' objections to the State's challenges to the six black veniremen, finding that the peremptory challenges were not made with a purpose to discriminate. We have reviewed the explanations offered by the State for exercising its peremptory challenges against each of the six veniremen so challenged. The question before us is whether the trial court erred in finding the State's explanations sufficient to rebut any prima facie showing of purposeful discrimination that may have been made by defendants.

After paying special deference to the findings of the trial court as mandated by *Jackson*, we hold the court did not err in finding the State's explanations sufficient to rebut any prima facie showing of purposeful discrimination that may have been made by defendants. First, while the State did not outline a profile or criteria for selecting jurors, it is obvious from the record that it would strike jurors who had connections to the defendants or to a principal State's witness or whom it believed would be prejudicial against the State. For five of the six challenged

veniremen, the State's explanations connected a challenged ve-
nireman or a family member of the venireman to a defendant, a
member of a defendant's family, or to a State's witness. In the
case of the sixth challenged venireman, the State explained that
the juror could not be impartial to the State because he had re-
cently been fined for a traffic violation for which he said he was
innocent. Second, the record does not reflect that the assistant
district attorney made any comments indicating a purpose to dis-
criminate.

Giving deference to the decision of the trial court, and lack-
ing a transcript of the jury's voir dire as well as complete infor-
mation on the racial composition of the jury venire and the jury,
we cannot hold that defendants have shown error in the trial
court's decision. The trial judge did not violate defendants' rights
under either the federal or state constitutions by overruling their
objections to the State's use of peremptory challenges. These as-
signments of error are meritless.

[3] Defendant Cannon assigns error to the denial of his motion
to suppress the testimony of Kimberly Stocks identifying him as
one of the perpetrators of the offense charged. He argues the in-
court identification of him by the witness "was tainted by imper-
missibly suggestive pretrial identification procedures." He bases
this assignment of error on exceptions to findings of fact made
after a voir dire hearing on the motion to suppress and the order
denying the motion. These exceptions raise only the questions of
whether the findings are supported by competent evidence ad-
duced at the hearing and whether the findings support the order
denying the motion to suppress. A trial court's findings on voir
dire are conclusive and binding on appeal when supported by
competent evidence. *State v. White*, 307 N.C. 42, 296 S.E. 2d 267
(1982). We have examined the evidence adduced at the voir dire
hearing and the exceptions on which this assignment of error is
based. We hold the evidence supports the findings made by the
trial judge, and the findings support the conclusion to deny the
motion to suppress. This assignment of error has no merit.

Defendant Redmond assigns error to the court's admission
into evidence of a videotape of the robbery and the court's failure
to give a limiting instruction to the jury before allowing them to
view the videotape. In his brief, defendant Redmond first argues

the court erred in admitting the videotape into evidence because the State failed to show that the video camera was properly installed and operating at the time of the robbery.

[4] Videotapes are admissible into evidence for both substantive and illustrative purposes. G.S. 8-97. Videotapes should be admissible under the rules and for the purposes of any other photographic evidence. *State v. Johnson*, 18 N.C. App. 606, 197 S.E. 2d 592 (1973). The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, *Campbell v. Pitt County Memorial Hospital*, 84 N.C. App. 314, 352 S.E. 2d 902, *aff'd*, 321 N.C. 260, 362 S.E. 2d 273 (1987) (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . . ," *State v. Luster*, 306 N.C. 566, 569, 295 S.E. 2d 421, 423 (1982); (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," *State v. Kistle*, 59 N.C. App. 724, 726, 297 S.E. 2d 626, 627 (1982), *disc. rev. denied*, 307 N.C. 471, 298 S.E. 2d 694 (1983) (substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed,'" *State v. Johnson*, 18 N.C. App. 606, 608, 197 S.E. 2d 592, 594 (1973).

[5] On voir dire Stocks testified that the videotape was a factual representation of the events on the night of the robbery. She also testified that the business had installed the camera approximately six weeks before the robbery and that the camera was working properly before and after the night of the robbery. On voir dire, Larry Williams, a Kinston police department detective, testified that he had exclusive care and custody of the video camera film since the night of the robbery. We hold that there was sufficient evidence for the trial judge to find that the State had laid a proper foundation to introduce the videotape into evidence for either substantive or illustrative purposes. This portion of this assignment of error has no merit.

[6] Defendant Redmond also argues that the judge erred in allowing the jury to view the videotape without first instructing them that it was admissible solely for the purpose of illustrating

Stocks' testimony. Courts have admitted properly-authenticated photographs without limiting instructions when no limiting instruction was requested. *State v. Rupard*, 299 N.C. 515, 263 S.E. 2d 554 (1980). Here, defendant did not request a limiting instruction. Furthermore, since the State laid a proper foundation to introduce the videotape for either substantive or illustrative purposes, no limiting instruction was necessary. Defendant has shown no possible error.

[7]  By his last assignment of error, defendant Redmond contends the trial judge erred in denying his motion to dismiss for insufficiency of the evidence to identify him as one of the two armed men who robbed the Lunch Box. Viewing the evidence in the light most favorable to the State, we hold there was plenary evidence in the record linking defendant Redmond to the crime. The State's evidence tends to show that defendant was found hiding beneath a house in the area that the robbers were reported to have run. Defendant matched the description of one of the robbers and was in the company of defendant Cannon, who was positively identified by a victim as one of the robbers. From the area beneath and around the house, law enforcement officers found a pair of flowered shorts and a burgundy silk-type shirt with holes cut in each, two pairs of tennis shoes, a pocketknife, and $305.00, all of which were linked to the robbery. We hold the trial court did not err in submitting the evidence to the jury. This assignment of error, like the others, is without merit.

We hold defendant had a fair trial free from prejudicial error.

No error.

Judge PARKER concurs.

Judge JOHNSON concurs in part; dissents in part.

Judge JOHNSON concurs in part; dissents in part.

I respectfully dissent as to the majority's affirmance of the sentence imposed on defendant Cannon and concur as to the remainder of the opinion. I believe defendant Cannon is entitled to a new sentencing hearing because the trial judge decided before trial the sentence he should receive.

Prior to the start of trial, the trial judge called both defense attorneys and the prosecutor to the bench. Upon learning that defendants had rejected a plea bargain offer and intended to go to trial, the judge said to the defense attorneys in the most vehement language that if defendants determined to go to trial and were convicted, he would give them the maximum sentence.

At a later point during this discussion at the bench, the judge stated that he would sentence defendant Cannon to not less than thirty-five years if convicted. As the majority notes, the judge subsequently stated during trial that he hoped both defense attorneys had advised their clients of the sentences he intended to give if they were convicted. After conviction the judge gave defendant Cannon a thirty-five year sentence, exactly as promised.

In the case of defendant Redmond, the trial judge ultimately handed down a considerably shorter sentence than the forty years he threatened before trial. Therefore, I do not dissent as to defendant Redmond.

In North Carolina a convicted criminal defendant is entitled to a hearing for the purpose of sentencing. G.S. sec. 15A-1334(a). At the hearing the defendant and prosecutor may present witnesses and arguments relevant to sentencing. G.S. sec. 15A-1334(b). It is at this point, when all the evidence of possible aggravating and mitigating factors is presented, that it is appropriate for a trial judge to determine sentence. *See* G.S. sec. 15A-1334.

Our Court has stressed in *State v. McRae*, 70 N.C. App. 779, 320 S.E. 2d 914 (1984), the importance of a convicted criminal defendant's receiving a meaningful sentencing hearing. The trial judge in *McRae* informed the defendant a month before the sentencing hearing of the sentence he would receive. In vacating defendant's sentence and remanding for a new sentencing hearing, this Court indicated that the trial judge had foreclosed defendant's right to have a meaningful sentencing hearing and thereby frustrated the purpose of the Fair Sentencing Act. *Id.*

When the trial judge in the case *sub judice* first told defendant Cannon's attorney that Cannon would receive a thirty-five year sentence, the judge had not heard the evidence at trial and

was aware only of one aggravating factor, a prior conviction. It was not until the sentencing hearing after trial that defendant Cannon offered evidence of a mitigating factor which was accepted by the court. I cannot conclude that the judge arrived at defendant Cannon's sentence *solely* on the basis of weighing the aggravating and mitigating factors since he had predicted the same sentence even before trial. Defendant Cannon may have received a reasonable sentence. However, the process of finding aggravating and mitigating factors under the Fair Sentencing Act should not be used as a means of substantiating a sentence reached in part because of the trial judge's ire directed toward a defendant for exercising his constitutional right to go to trial, as the evidence in this case suggests.

In *State v. Boone*, 293 N.C. 702, 239 S.E. 2d 459 (1977), our Supreme Court stated that "[n]o other right of the individual has been so zealously guarded over the years and so deeply embedded in our system of jurisprudence as an accused's right to a jury trial." *Id.* at 712, 239 S.E. 2d at 465. In support of this fundamental right, I must respectfully dissent from the majority's affirmance of defendant Cannon's sentence.