**UNITED STATES, Appellee,**

v.

**First Lieutenant Ronald R. REICHART,
211–48–6404, United States
Army, Appellant.**

**ACMR 8802252.**

U.S. Army Court of Military Review.

26 July 1990.

For Appellant: Captain Brian D. Bailey, JAGC, Captain Paula C. Juba, JAGC (on brief).

For Appellee: Colonel Alfred F. Arquilla, JAGC, Lieutenant Colonel Daniel J. Dell'Orto, JAGC, Major Maria C. Fernandez, JAGC, Captain James K. Reed, JAGC (on brief).

Before KUCERA, GILLEY and GIUNTINI, Appellate Military Judges.

## OPINION OF THE COURT

PER CURIAM: *

Contrary to his pleas, the appellant was convicted by a general court-martial composed of officer members of larceny of two candy bars in violation of Article 121 of the Uniform Code of Military Justice, 10 U.S.C. § 921 (1982) [hereinafter UCMJ]. His approved sentence was a dismissal from the service.

We have considered the following issue raised by appellate defense counsel:

WHETHER THE MILITARY JUDGE ERRED BY FAILING TO SUPPRESS THE VIDEOTAPE IN LIGHT OF THE GOVERNMENT'S FAILURE TO ESTABLISH A PROPER FOUNDATION?

We conclude that the military judge did not err in admitting the videotape into evidence.

In an Army and Air Force Exchange Store [hereinafter AAFES], Mrs. Tuitau, a store security employee observed appellant, by way of a closed-circuit television monitor which was recording on a videotape, placing two unknown items into the cargo pocket of his battle-dress uniform. She then saw appellant walk past the store registers without making a purchase. When appellant was beyond the check-out point, Mrs. Tuitau stopped appellant and informed him that there was a discrepancy concerning merchandise which was not paid for, and asked appellant to go to her office. Appellant complied and once inside her office, he produced two candy bars and explained that he had forgotten to pay for them. At trial, government counsel presented Mrs. Tuitau's testimony and the videotape. Over defense objection, the military judge admitted the videotape into evidence.

■ Unlike our civilian counterparts who have had occasion to develop foundational requirements for videotapes,[1] this issue is one of first impression in the military.

■ Manual for Courts–Martial, United States, 1984, Mil.R. of Evid. 1001(2) [hereinafter Mil.R.Evid.] includes videotapes under the definition of photographs. Hence, the admissibility of the videotape is governed by the same rules and principles regarding the authentication of photographs in Mil.R.Evid. 901. *See also Gordon v. State*, 735 S.W.2d 510 (Tex.Ct.App. 1987), *aff'd*, 784 S.W.2d 410 (Tex.Crim.App. 1990). In addition to proper authentication, a videotape must also meet the tests of relevancy and demonstrate that its proba-

---

* Judge Dewey C. Gilley, Jr. and Judge Charles H. Giuntini took final action prior to their respective retirements from the Army.

1. A videotape recording is an electronic means of recording sound and action on magnetic tape for subsequent playback in the form of a motion picture. 1 C. Scott, Photographic Evidence § 87 (2d ed. 1987). Videotape recordings are admissible in evidence on the same basis as sound motion picture films. 3 C. Scott, Photographic Evidence § 1294 (2d ed. Supp.1987). See *Fisher v. State*, 7 Ark.App. 1, 643 S.W.2d 571, 573 (Ark.Ct.App.1982).

tive value substantially outweighs any prejudicial impact.

██ By ensuring that a proper foundation is laid or that a document is properly authenticated, the military judge is guaranteeing that the court members could find that particular evidence is what it purports to be. Mil.R. of Evid. 901(a).[2] There are several bases for authenticating a videotape. The first doctrine is the "pictorial testimony" theory. In *United States v. Richendollar*, 22 M.J. 231, 232 (C.M.A. 1986), the Court held that "[o]rdinarily, a photograph may be authenticated by the testimony of a witness who is familiar with the scene depicted and states that the photograph is an accurate representation of that scene.... The testimony of the actual photographer is unnecessary.... Under this traditional 'pictorial testimony theory', the photograph is then incorporated by reference into the testimony of the authenticating witness and is admissible as an illustration of that witness' testimony."

The North Carolina Court of Appeals in *State v. Johnson*, 18 N.C.App. 606, 197 S.E.2d 592 (N.C.Ct.App.1973), held the admission into evidence of a videotape for the purpose of 'illustration of the witnesses' testimony was proper despite the fact that the witnesses did not observe with the naked eye the events being recorded. The witnesses actually observed the factual event by way of a monitor at the time it was taking place, and the mechanical or electrical device by which they were able to view it is of no consequence so long as it was accurate. The picture fairly and accurately depicted the scene and had not been edited. *See State v. Newman*, 4 Wash. App. 588, 484 P.2d 473 (Wash.Ct.App.1971), *review denied*, 79 Wash.2d 1004 (Wash. 1971) (witness need not be the photographer but must be able to give some indication as to when, where, and under what circumstance photo was taken and that photo actually portrays what was taken).

Under the "pictorial testimony" theory, a videotape, like a photograph, is incorporat-

ed by reference into the testimony of the authenticating witness who testifies that the videotape is a fair and accurate representation of the subject about which they are testifying. Once this foundation is established, the videotape is admissible as an illustration of that witness' testimony.

██ A second doctrine for authenticating a videotape is under the "silent witness" theory. This theory applies when no person can verify, by personal observation, that the videotape actually represents what occurred. *See Fisher v. State*, 7 Ark.App. 1, 643 S.W.2d 571 (Ark.Ct.App.1982) (videotape of defendant removing groceries through rear door of store while store personnel were absent was held admissible). *See also United States v. Howell*, 16 M.J. 1003 (A.C.M.R.1983) (photos taken at an automatic teller were admissible under the "silent witness" theory since foundational requirement was satisfied circumstantially by evidence which establishes the reliability of the process or system which produces the photograph); *United States v. Taylor*, 530 F.2d 639 (5th Cir.1976), *cert. denied*, 429 U.S. 845, 97 S.Ct. 127, 50 L.Ed.2d 117 (1976) (videotape was admissible after a government witness talked about operation of camera even though no witness actually verified the transactions observed within the tape); *State v. Bunting*, 187 N.J.Super. 506, 455 A.2d 531 (N.J.Super.Ct.App.Div. 1983) (testimony regarding installation, activation and view of the camera, use and security of the camera, the testing and removal of film, and testimony as to the chain of custody of film was sufficient foundation to admit film which was taken during commission of the crime).

Under the "silent witness" theory, a videotape is authenticated by establishing the process by which the videotape was taken, i.e. the installation of the camera, use and security of the camera, testing, and removal of the film and testimony as to the chain of custody. Upon establishing this foundation, it is admissible as independent evidence of the crime and could be admitted

---

**2.** Mil.R.Evid. 901(a) states: "[t]he requirement of authentication or identification as a condition precedent to admissibility is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims."

without a corroborative eyewitness if the film is otherwise authenticated.

 Additionally, there is the "circumstantial evidence" theory, which is a hybrid of the "silent witness" theory. In *United States v. Rembert*, 863 F.2d 1023 (D.C.Cir. 1988), the Court held that the contents of photographic evidence admitted into evidence need not be merely illustrative, but can be admitted independent of the testimony of any witness as to the events depicted providing a sufficient foundation is laid. The Court found that circumstantial evidence concerning the event, the contents of the photo and testimony regarding the loading and security of the film were sufficient for authenticating a videotape despite the absence of testimony regarding the process by which the pictures were taken.

A videotape is properly authenticated under the "circumstantial theory" by testimony regarding the loading and security of the film and the film's content provides circumstantial evidence relating to the event at issue. Upon showing this foundation, the videotape is then admissible as independent evidence of the crime.

In the instant case, the videotape was properly admissible under the "pictorial testimony" theory which was used to supplement Mrs. Tuitau's testimony. As a store security employee, she testified that she was familiar with the store location where, by way of the television monitor, she observed Lieutenant Reichart holding two candy bars and placing them in his pocket. She testified the video was an accurate representation of that scene which she had observed through a television monitor at the time it occurred. In fact, she was also the operator of the camera and at times moved the camera to follow appellant as he exited the store. In a classic "pictorial testimony" situation, Mrs. Tuitau would have observed the scene with her naked eye and then testified that the videotape accurately reflected what she observed. Here, Mrs. Tuitau testified that she observed the scene with the aid of a television monitor and that the videotape accurately reflected what she so observed. We find these facts to fit within the "pictorial testi-

mony" theory, just as they would have if Mrs. Tuitau had observed the lieutenant through binoculars, while he was being videotaped.

We also find that the videotape was relevant and assisted the trier of fact and this court in determining appellant's guilt. The tape was of significant probative value. As found in *Hendricks v. Swenson*, 456 F.2d 503, 507 (8th Cir.1972), the videotape is superior in protecting the rights of the defendant since it exactly reproduces the defendant's demeanor or condition. No better evidence could be available to determine appellant's guilt or innocence than to have the opportunity to view his actions while committing the crime alleged.

We have considered the second assignment of error and find it to be without merit.

The findings of guilty and the sentence are affirmed.