IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA25-145

Filed 1 October 2025

Mecklenburg County, Nos. 20CR012353-590, 20CR228620-590

STATE OF NORTH CAROLINA

v.

JOHNATHAN ANDRE RAMSEY, Defendant.

Appeal by defendant from judgment entered 30 October 2023 by Judge Sarah E. Kirby-Turner in Mecklenburg County Superior Court. Heard in the Court of Appeals 26 August 2025.

*Reid Cater, for defendant-appellant.*

*Attorney General Jeff Jackson, by Special Deputy Attorney General Lisa T. Pakela and Special Deputy Attorney General Christopher R. McLennan, for the State.*

FLOOD, Judge.

Defendant appeals from the trial court's judgment finding him guilty of voluntary manslaughter. On appeal, Defendant argues the trial court erred by first, admitting video evidence without proper authentication, and second, denying Defendant's motion for additional jury instructions on simple assault. Upon review, we conclude the trial court did not err in admitting the video evidence for illustrative purposes where a witness testified the video fairly and accurately represented the situation, and we further conclude the trial court did not err in denying Defendant's motion where a short form indictment on murder precludes the lesser offense of

simple assault.

## I. Factual and Procedural Background

On 22 August 2020, Defendant and his wife, Antiqua Coleman, went to visit Coleman's uncle, to whom they referred as "Juicy," to discuss an ongoing family dispute between Juicy and Juicy's nephew, Billy McKay, Jr. McKay and Juicy lived together at Juicy's apartment. McKay's girlfriend at the time, Athenna Avery, testified McKay and Juicy had recently fought, and Juicy was threatening to kick McKay out of the apartment. In response to this threat, Avery created a t-shirt that referenced the fight between the two men, and shared pictures of the t-shirt on Facebook.

According to Avery, upon arrival at Juicy and McKay's apartment, Defendant and Coleman met with McKay and Avery. Defendant told McKay that he was "here to talk to [McKay] about the [t]-shirt" and "here to protect [his] wife[.]" Avery claimed McKay responded: "This has nothing to do with your wife." Avery testified that at some point after this discussion, the t-shirt went missing; she believed Defendant had taken the t-shirt, which led to a dispute between Defendant and McKay regarding compensation for it.

According to Avery, McKay told Defendant, "you owed me for my shirt or you have to give me my [t-]shirt back[,]" but Defendant responded he would not get "paid until Wednesday." Avery explained that shortly thereafter, Defendant and McKay discussed McKay's gun Defendant had taken, resulting in Defendant returning the

gun to McKay and then leaving.

Avery further testified that later that evening, McKay and Avery returned from a trip to the grocery store and saw Defendant in the driveway of the apartment. As Avery unloaded groceries from the vehicle, Defendant "asked [McKay] to get in [Defendant's] car" to give McKay money for the t-shirt. According to Avery, the two men stood in the driveway having a discussion about the payment when Defendant struck McKay in "the face[,]" "beg[an] to beat on him[,]" and continued to strike McKay after he fell. Avery then took her young daughter inside. Defendant followed her inside, "threatened [her] with a gun[,]" told her "don't come out here or I'll do the same thing to you[,]" and left soon after she shut herself in one of the rooms of the apartment.

Avery testified that after Defendant walked out of the apartment, she "walked out of the room" and saw McKay "walking in" the apartment. McKay "sat down in [a] chair," "pulled his phone out[,]" and when she tried to talk to him, she noticed "[h]is mouth was moving but nothing was coming out." Avery called 911 as McKay "passed out[.]" McKay was taken by medics to the hospital and died a short time later. Defendant was subsequently charged with second degree murder by a short form indictment.

On 23 October 2023, this matter came on for trial. The State presented evidence including the above testimony from Avery as well as testimony from medical examiner Dr. Johnathan Privette, Officer Samatha Dowell, Officer Keywana Darden,

and Detective John Koukopoulos.

Dr. Privette testified McKay had died of "acute blood loss" from a spleen injury, but he could not say whether Defendant had caused the injuries to McKay's spleen. Dr. Privette explained "[f]ighting is another common cause of spleen injury[,]" and that McKay "did have some blunt force injuries on the outside of his body and some resuscitation injuries." He further noted McKay's underlying diseases—heart disease and kidney disease—made him "more vulnerable to an injury that caused his death."

Officer Dowell, the responding officer to the scene, testified that, upon her arrival to the apartment, she "did not see any signs of trauma on [McKay's] body, . . . [but she] could tell he was in pain[.]" Officer Dowell further testified that during her search of the scene, she found a cell phone near the driveway.

Officer Darden, who took pictures of McKay's body at the hospital after he died, testified that the photographs she took showed "suspected injuries, [and a] suspected bruise to the left side of [McKay's] torso."

The State also introduced Exhibit 37, a twenty-second video of the fight from the cell phone found by Officer Dowell, which was admitted into evidence for illustrative purposes only and over Defendant's objection regarding a lack of foundation. Detective Koukopoulos, who was tendered and received as an expert in digital forensics, analyzed the contents of the cell phone. Before the prosecutor began directly examining Detective Koukopoulos as to the evidence found on the cell phone, the trial court asked the jury to leave and conducted a *voir dire* regarding the

evidence. During this *voir dire*, Detective Koukopoulos testified he received the cell phone from the "property control" building, brought it to the lab to analyze it, and observed that the original collection seal was unbroken from when the phone had been collected from the scene.

Based on this testimony, the trial court admitted the evidence from the cell phone, while "recogniz[ing] that there may be some missing links in the chain" of custody. The trial court further explained that any missing links would go "to the weight" of the evidence.

The trial court brought the jury back in, and the State again presented the above testimony from Detective Koukopoulos. The State did not present any evidence asserting who had filmed the video itself; however, Avery testified that the video "fairly and accurately illustrate[d] the fight as [she] saw it[.]"

On 27 October 2023, at the close of all evidence and arguments, the jury began its deliberation after receiving instructions on second degree murder and voluntary manslaughter. That afternoon, the jury requested clarification on legal termination, and asked to again see the cell phone video, body camera footage, and photos of the body. The trial court played, in relevant part, the cell phone video for the jury after giving limiting instructions as to the video being admitted and used only for illustrative purposes. On the following deliberation day, the jury sent a note to the

trial judge stating they were at an impasse. After receiving an *Allen*[1] charge, the jury again requested to review several pieces of evidence, including the cell phone video, asking: "Is it possible to start and stop the video? Or could we watch it multiple times?" When the jury was brought in to review the evidence, the foreperson explained, regarding the video: "It's so short[,] I wonder if you all agree to just watch it multiple times." After viewing the video three times, the jury returned to their deliberations and reached their verdict nearly twenty minutes later, finding Defendant guilty of the lesser charge of voluntary manslaughter.

While the jury had been deliberating early on the second day, Defendant filed, and the trial court heard, a motion for an additional instruction on the lesser-included offense of simple assault. In response to the motion, the State asserted that, because the short form indictment was used instead of a long form indictment, simple assault could not be considered a lesser-included offense. The trial court subsequently denied Defendant's motion, and the jury did not receive the lesser-included instruction.

Defendant timely appealed.

## II. <u>Jurisdiction</u>

This Court has jurisdiction to hear an appeal from the final judgment of a superior court pursuant to N.C.G.S. §§ 7A-27(b) and 15A-1444(a) (2023).

---

[1] "The term 'Allen charge' is derived from the case of *Allen v. United States*, in which the United States Supreme Court approved the use of jury instructions that encouraged the jury to reach a verdict, if possible, after the jury requested additional instructions from the trial court." *State v. Gordon*, 278 N.C. App. 119, 122 (2021) (citation omitted).

## III. <u>Analysis</u>

On appeal, Defendant argues the trial court erred by (A) admitting the cell phone video evidence without proper authentication, and (B) denying Defendant's motion for additional jury instructions on simple assault. We address each argument, in turn.

### A. Video Evidence

Defendant first argues the trial court erred by admitting the cell phone video evidence without proper authentication. We disagree.

"A trial court's determination as to whether a document has been sufficiently authenticated is reviewed de novo on appeal as a question of law." *State v. Hicks*, 243 N.C. App. 628, 638 (2015) (citation omitted) (cleaned up). "Under a de novo review, th[is C]ourt considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *Id.* at 639 (citation omitted) (cleaned up). If a videotape is admitted in error, the error "must be material and prejudicial." *State v. Mason*, 144 N.C. App. 20, 27 (2001). "An error is not prejudicial unless there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial." *Id.* at 27–28 (citation and internal quotation marks omitted). "Where it does not appear[, however,] that the erroneous admission of evidence played a pivotal role in determining the outcome of the trial, the error is harmless." *Id.* at 28.

This Court has stated "when a videotape depicts conduct of a defendant in a

criminal case, its potential impact requires the trial judge to inquire carefully into its authenticity, relevancy, and competency." *Id.* at 25 (citation omitted). The standard for the admission of a videotape was articulated in *State v. Cannon*, 92 N.C. App. 246 (1988), *rev'd on other grounds*, 326 N.C. 37 (1990), in which this Court stated:

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape;" (3) testimony that 'the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing' (substantive purposes); or (4) 'testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed.'

92 N.C. App. at 254 (internal citations omitted) (cleaned up).

Defendant relies on *Mason* to argue there was insufficient evidence to lay a proper foundation for the video. In *Mason*, the defendant was charged with armed robbery of a store, and at trial, "the store surveillance tape was admitted for substantive purposes." 144 N.C. App. at 25. By analyzing three areas of inquiry—(1) whether the recording system in question was "properly maintained" and operated, (2) whether the videotape "accurately present[ed]" the events depicted, and (3) "whether there was an unbroken chain of custody"—we held that "the evidence was deficient in each of these areas." *Id.* at 26. After concluding the surveillance video had been admitted in error, we held, however, that this error was not prejudicial as "there

was substantial evidence of the defendant's guilt[,]" including two eyewitness testimonies "confidently identif[ying] the defendant as one of the men who had robbed" the store. *Id.* at 28.

Unlike the video evidence in *Mason,* which was admitted for substantive purposes, the video here was admitted for illustrative purposes only, with a limiting instruction. The State laid a proper foundation for the video by presenting Avery's testimony that the video fairly and accurately illustrated the fight as she saw it. *See Cannon*, 92 N.C. App. at 254. Accordingly, we hold the trial court did not err in admitting the cell phone video evidence for illustrative purposes.

## B. Jury Instructions

Defendant next argues the trial court erred by denying Defendant's motion for additional jury instructions on simple assault. Specifically, Defendant contends our Supreme Court's recent decision in *State v. Singleton* compels a different result. 386 N.C. 183 (2024). We disagree.

Both parties contend in their briefs that, under *State v. Edwards*, a trial court's decision on allowing additional jury instructions after the jury has retired for deliberations is reviewed solely for abuse of discretion. 239 N.C. App. 391, 392 (2015). In *Edwards*, we explained the "proper standard of review depends upon the nature of a defendant's request for a jury instruction." *Id.* at 392. We noted "a trial court's decision to grant or deny the *jury's* request for additional instruction" is reviewed for an abuse of discretion, but we explained that "[w]hether evidence is sufficient to

warrant an instruction . . . is a question of law; therefore, the applicable standard of review is de novo." *Id.* at 393 (citation omitted) (emphasis added). Under a de novo review, this Court "considers the matter anew and freely substitutes its own judgment for that of the lower tribunal." *State v. Clapp*, 235 N.C. App. 351, 359–60 (2014) (citation and internal quotation marks omitted).

"It is settled in this jurisdiction that if a specifically requested jury instruction is proper and is supported by the evidence, the trial court must give the instruction, at least in substance." *State v. Jenkins*, 35 N.C. App. 758, 760 (1978). "The question then arises as to whether the requested instruction was proper under the evidence of this case[,]" and "is for the trial judge since he can more accurately determine those instances when the instruction would be appropriate[,]" such that we then review this decision for an abuse of discretion. *Id.* at 760 (citation and internal quotation marks omitted).

Even if this Court finds the trial court committed instructional error, we reverse and remand for a new trial only upon a defendant's demonstration of prejudice, whereby he must show "there is a reasonable possibility that, had the error in question not been committed, a different result would have been reached at the trial out of which the appeal arises." *State v. Dilworth*, 274 N.C. App. 57, 61 (2020) (citation and internal quotation marks omitted).

In *State v. Collins* and *State v. Whiteside*, our Supreme Court affirmed the trial court's denial of lesser-included assault jury instructions where the defendant was

charged with a short form indictment. *See State v. Collins*, 334 N.C. 54, 63 (1993);

*State v. Whiteside* 325 N.C. 389, 403 (1989). Our Supreme Court explained that

> an indictment charging 'that [the] defendant unlawfully, willfully and feloniously and of malice aforethought did kill and murder the victim is insufficient to support a verdict of guilty of assault, assault inflicting serious injury or assault with intent to kill' because such murder indictment does not specify a murder accomplished by assault.

*Collins*, 334 N.C. at 63 (quoting *Whiteside*, 325 N.C. at 403) (cleaned up).

Defendant acknowledges this binding precedent, but requests that we

reconsider in light of our Supreme Court's recent decision in *Singleton*, which held

that a short form indictment was sufficient for charging second degree rape despite

it lacking the knowledge element. 386 N.C. at 213 ("[W]hile there is a knowledge

element necessary to sustain a conviction at trial, that element is not required to be

alleged in the indictment."). The Court explained while "[c]ertainly, such knowledge

is an element of the offense and must be proven at trial, . . . the purpose of short-form

indictments is to relieve the State of the common law requirement that every element

of the offense be alleged[,]" and reasoned that, despite the missing element,"[i]t

cannot [] be said that this indictment deprived [the] defendant of notice of the charge

such that he could not prepare a defense, or that the court could not enter judgment."

*Id.* at 213 (citation omitted).

In light of *Singleton,* Defendant contends: "The interest of justice requires that

the same reasoning would apply to the situation in this case and that [Defendant]

- 11 -

should not have been denied a proper juror instruction on a lesser included offense because of the *technical* style of the indictment that the State chose to use." (emphasis added).

Defendant's reliance on *Singleton*, asking that we overturn *Collins* and *Whiteside*, is misplaced. The Court in *Singleton* reasoned the short form allowed the State to charge offenses and maintain jurisdiction without noting "every element of the offense be alleged[,]" even though those elements "must be proven at trial." *Id.* at 213. *Singleton* did not, however, discuss or create any holdings regarding lesser-included offenses within short form indictments; rather, *Singleton* specified only what elements a short form indictment requires.

Accordingly, we conclude the trial court did not err in denying Defendant's motion for additional jury instructions on simple assault because the short form indictment here did not specify a murder by assault. *See Collins*, 334 N.C. at 63; *Whiteside,* 325 N.C. at 403. Because no error occurred, we need not consider the issue of prejudice. *See Dilworth*, 274 N.C. App. at 61; *Singleton*, 386 N.C. at 214.

## IV. <u>Conclusion</u>

Upon review, we conclude the trial court did not err in admitting the video evidence for illustrative purposes, where an eyewitness testified the video fairly and accurately represented the situation. We further conclude the trial court did not err in denying Defendant's motion where a short form indictment on murder precludes the lesser offense of simple assault.

NO ERROR.

Judge TYSON concurs.

Judge HAMPSON concurs in result only.