STATE OF NORTH CAROLINA v. CHARLES LAMONT AYSCUE

No. COA04-203

(Filed 5 April 2005)

## 1. Evidence— convenience store videotape—proper foundation

The trial court did not err by admitting a convenience store videotape for illustrative purposes in an armed robbery prosecution. A person working at the store during the robbery testified that the tape was taken out of the camera on the night of the robbery, that the tape accurately represented the incident, explained a discrepancy in the date and time, and deputies testified about the chain of custody. A proper foundation was laid. N.C.G.S. § 8-97.

## 2. Evidence— convenience store videotape—substantive evidence—no plain error

There was no plain error in an armed robbery prosecution in the introduction as substantive evidence of a convenience store videotape. The tape depicted the events of the robbery, corroborated the testimony of workers in the store, and there is no indication that the videotape was suggestive, confusing, or misleading, or that it provided an improper basis for the jury's verdict. The record does not reflect that the probative value of the videotape was outweighed by undue prejudice.

## 3. Evidence— prior convictions—not prejudicial

In light of the entire record in an armed robbery prosecution, including identification testimony, there was no prejudice from the State cross-examining defendant about his prior out-of-state conviction for possession of stolen property.

## 4. Sentencing— prior record level—New York conviction

The trial court erred in determining defendant's prior record level when sentencing him for armed robbery. The State failed to produce sufficient evidence that defendant's prior New York conviction for possession of stolen property in the fifth degree was substantially similar to a Class 1 misdemeanor in North Carolina.

Appeal by defendant from judgment entered 20 August 2003 by Judge Robert H. Hobgood in Vance County Superior Court. Heard in the Court of Appeals 17 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Kimberly W. Duffley, for the State.*

*Anne Bleyman for defendant-appellant.*

TIMMONS-GOODSON, Judge.

Charles Lamont Ayscue ("defendant") appeals his conviction of robbery with a firearm. For the reasons discussed herein, we hold that defendant received a trial free of prejudicial error, but we remand the case for a new sentencing hearing.

The State's evidence presented at trial tends to show the following: On 13 April 2002, Regina Durham ("Durham") and Leon Debnam ("Debnam") were working at Currin's Mini Mart in Henderson when defendant entered the store and asked Durham for change for a fifty dollar bill. Durham had seen defendant "[n]umerous times" in the store, and the two had "conversations" on more than one occasion. Durham told defendant that she did not keep that much change that late at night, and defendant left the store. Defendant then returned to the store and told Durham, "you know you just made me miss a drug deal." Durham replied, "well, maybe I just kept you from getting in trouble[,]" and she continued working with other customers.

As Durham was waiting on another customer, defendant "pulled out [a] gun" and demanded that Durham give him money. Durham initially "didn't pay him any attention," but after defendant "clicked the gun," Durham opened the cash register and gave defendant approximately $580.00 in cash. After defendant fled the store, Durham "pushed the panic button" and locked up the store.

Debnam did not notice defendant when he first entered the store, but while Debnam was mopping the floor in front of the cash register he noticed defendant "was real fidgety, and went from one—one end of the register to the other." Debnam saw what "[l]ooked like a nine millimeter" hanging out of defendant's pants pocket, and he heard defendant say, "give it all here." Debnam initially believed defendant was talking to a customer in the store, but stated that "when I heard the (makes sound and demonstrates chambering bullet), I looked back, he had the gun pointed at [Durham]." Debnam then saw defendant flee the store after Durham gave him money from the cash register.

When law enforcement officers arrived at the store, Durham described what had happened during the robbery and informed the

STATE v. AYSCUE

[169 N.C. App. 548 (2005)]

officers that the store had a videotaping system. While watching the videotape with the officers, Durham told the officers that "she knew the guy, but she just couldn't kind of think of his name." She informed the officers that the assailant had twin sisters, one of whom worked at a local middle school. Vance County Sheriff's Department Deputy J.L. Goolsby ("Deputy Goolsby"), who was called to the scene to investigate the incident, had attended school with one of defendant's sisters, who worked at the middle school Durham had indicated. When Deputy Goolsby suggested that defendant was the assailant, Durham snapped her fingers and said, "that's his name." Durham also told the officers where she believed one of defendant's twin sisters lived, as well as which way defendant had fled.

On 8 July 2002, defendant was indicted for robbery with a dangerous weapon. A grand jury reindicted defendant for the same charge on 2 June 2003 and 7 July 2003. Defendant's trial began 19 August 2003. At trial, defendant objected to the State's introduction of the videotape into evidence. The trial court overruled defendant's objection and initially allowed the introduction of the videotape solely for illustrative purposes. However, following testimony related to the chain-of-custody of the videotape, the trial court allowed the State to introduce the videotape for substantive purposes as well.

Following the State's presentation of its case, defendant requested that the trial court prohibit the State from introducing evidence related to defendant's prior out-of-state conviction for possession of stolen property in the fifth degree. The trial court denied defendant's request, and defendant subsequently testified on direct examination that he did not participate in the robbery of Currin's Mini Mart and that he was at another location on the night upon which the robbery occurred. Defendant also testified that the conviction for possession of stolen property in the fifth degree occurred in New York, and that he "didn't spend no time in jail for it, or nothing." Defendant testified that he "thought they" dismissed the charge.

On 20 August 2003, the jury found defendant guilty of robbery with a firearm. The trial court reviewed defendant's criminal record and determined that defendant had a prior felony record level II. The trial court thereafter sentenced defendant to seventy to ninety-three months incarceration. Defendant appeals.

---

We note initially that defendant's brief contains arguments supporting only ten of the original twenty-one assignments of error.

Pursuant to N.C.R. App. P. 28(b)(6) (2004), the omitted assignments of error are deemed abandoned. Therefore, we limit our present review to those issues properly preserved by defendant for appeal.

The issues on appeal are whether the trial court erred by: (I) admitting the videotape into evidence; (II) admitting evidence of defendant's prior out-of-state conviction; and (III) determining defendant's prior record level.

[1] Defendant first argues that the trial court erred by admitting the videotape into evidence. Defendant asserts that a proper foundation was not laid prior to the introduction of the videotape into evidence. We disagree.

Upon proper foundation, N.C. Gen. Stat. § 8-97 (2003) allows the introduction of videotapes into evidence for both illustrative and substantive purposes.

> The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape . . ."; (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," (substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area 'photographed[.]' "

*State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (citations omitted), *rev'd on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990).

In the instant case, Durham testified that the videotape was the one taken out of the camera on the night of the robbery and that the videotape accurately represented the incident she had described to the jury. Following this testimony, the trial court allowed the introduction of the videotape into evidence for illustrative purposes only. Durham then continued to testify, and on cross-examination, she explained the discrepancy between the date and time of the incident and the date and time contained on the screen when the videotape was played. Durham testified that the store had previously been robbed, but that the store had not yet "timed [the videotape system]

back up." Durham further testified that "[w]e change that tape every day." Deputy Goolsby testified that after viewing the tape, he "went back to the office and did the report on it." Deputy Goolsby testified that "[t]he tape was put into evidence" and that "it went under Detective Almond's case load." Vance County Sheriff's Department Detective John Almond ("Detective Almond") testified that he investigated the robbery and took the videotape into custody on 13 April 2002, and that the videotape had been in his custody, unaltered and unchanged, since that date. Following this testimony, the trial court admitted the videotape into evidence for substantive purposes. In light of the foregoing, we conclude that a proper foundation was laid for the introduction of the videotape into evidence for both substantive and illustrative purposes.

**[2]** Defendant asserts a second basis for contesting the admissibility of the videotape. While he concedes that he did not object to the introduction of the evidence for substantive purposes, defendant maintains that the trial court committed plain error by allowing the State to introduce the videotape into evidence for substantive purposes because the videotape was "highly prejudicial" to his case. We disagree.

"Plain error exists where, after reviewing the entire record, the claimed error is so fundamental, so basic, so prejudicial, or so lacking in its elements that justice could not have been done." *State v. Fleming*, 350 N.C. 109, 132, 512 S.E.2d 720, 736, *cert. denied*, 528 U.S. 941, 145 L. Ed. 2d 274 (1999). "A prerequisite to our engaging in a 'plain error' analysis is the determination that the [trial court's action] constitutes 'error' at all." *State v. Torain*, 316 N.C. 111, 116, 340 S.E.2d 465, 468, *cert. denied*, 479 U.S. 836, 93 L. Ed. 2d 77 (1986). Once we have determined that the trial court erred, " '[b]efore deciding that an error by the trial court amounts to "plain error," [we] must be convinced that absent the error the jury probably would have reached a different verdict.' " *Id.* (quoting *State v. Walker*, 316 N.C. 33, 39, 340 S.E.2d 80, 83 (1986)).

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." N.C. Gen. Stat. § 8C-1, Rule 403 (2003). Our Supreme Court has previously concluded that "relevant evidence is properly admissible . . . unless the judge determines that it must be excluded, for instance, because of the risk of 'unfair prejudice.' " *State v. Mercer*,

317 N.C. 87, 94, 343 S.E.2d 885, 889 (1986). According to its official commentary, "unfair prejudice" within the context of Rule 403 "means an undue tendency to suggest decision on an improper basis, commonly, though not necessarily, as an emotional one." N.C. Gen. Stat. § 8C-1, Rule 403 (Commentary).

In the instant case, the record does not reflect that the probative value of the videotape was outweighed by any undue prejudice. The videotape depicted the events of the robbery and corroborated the testimony of Durham and Debnam. We note that "[e]vidence which is probative of the State's case necessarily will have a prejudicial effect upon the defendant; the question is one of degree." *State v. Coffey*, 326 N.C. 268, 281, 389 S.E.2d 48, 56 (1990). Here, there is no indication that the videotape was suggestive, confusing, or misleading, nor is there any indication that the videotape provided an improper basis for the jury's verdict. Therefore, we conclude that the trial court did not err in allowing the introduction of the videotape as substantive evidence, and, accordingly, we overrule defendant's first argument.

[3] Defendant next argues that the trial court erred by allowing the State to cross-examine him regarding his prior out-of-state conviction for possession of stolen property in the fifth degree. Defendant asserts that the State failed to present sufficient evidence that the conviction met the requirements of N.C. Gen. Stat. § 8C-1, Rule 609(a). However, assuming *arguendo* that the trial court erred by ruling that the State would be allowed to present this evidence, defendant has failed to demonstrate that he was unfairly prejudiced by this error.

We note initially that defendant did not object to the State's questions during his testimony regarding the prior conviction. In order to preserve a question for appellate review, N.C.R. App. P. 10(b)(1) (2004) requires that "the complaining party . . . obtain a ruling upon the party's request, objection or motion." When the party's complaint involves the admissibility of evidence, the complaining party must present an objection when the evidence is introduced at trial, even where, as here, the objection was previously considered in a motion *in limine. State v. Hayes*, 350 N.C. 79, 80, 511 S.E.2d 302, 303 (1999); *but see* N.C. Gen. Stat. § 8C-1, Rule 103(a)(2) (2003) (effective October 1, 2003) ("Once the court makes a definitive ruling on the record admitting or excluding evidence, either at or before trial, a party need not renew an objection or offer of proof to preserve a claim of error for appeal."). Nevertheless, a party may preserve an

evidentiary issue where the party assigns plain error to the issue on appeal. *See* N.C.R. App. P. 10(c) (2004).

In the instant case, defendant concedes that he did not object to the introduction of this evidence during his testimony, and thus on appeal he assigns plain error to the trial court's ruling. As discussed above, "[b]efore deciding that an error by the trial court amounts to 'plain error,' [we] must be convinced that absent the error the jury probably would have reached a different verdict." *Walker*, 316 N.C. at 39, 340 S.E.2d at 83. In the instant case, during the initial investigation of the robbery, Durham identified defendant as the individual who had allegedly robbed the store. At trial, both Durham and Debnam identified defendant as the individual who had robbed the store, and Durham and Debnam also provided versions of the incident consistent with that displayed on the videotape and played before the jury. Defendant testified that the prior charge for possession of stolen property in the fifth degree had occurred in New York in 1999, and that he believed the charges had been dismissed. After reviewing the record of the instant case, including the foregoing evidence, we are not convinced that the jury would have reached a different result absent the introduction of evidence regarding defendant's prior conviction for possession of stolen property in the fifth degree. Therefore, we conclude that the trial court did not commit plain error by allowing the State to introduce evidence regarding the prior conviction. Accordingly, defendant's second argument is overruled.

[4] Defendant's final argument is that the trial court erred in determining his prior record level. Defendant asserts that the State produced insufficient evidence to support the trial court's conclusion that he possessed a prior felony record level II. We agree.

N.C. Gen. Stat. § 15A-1340.14(e) (2003) provides as follows:

Except as otherwise provided in this subsection, a conviction occurring in a jurisdiction other than North Carolina is classified as a Class I felony if the jurisdiction in which the offense occurred classifies the offense as a felony, or is classified as a Class 3 misdemeanor if the jurisdiction in which the offense occurred classifies the offense as a misdemeanor. . . . If the State proves by the preponderance of the evidence that an offense classified as a misdemeanor in the other jurisdiction is substantially similar to an offense classified as a Class A1

or Class 1 misdemeanor in North Carolina, the conviction is treated as a Class A1 or Class 1 misdemeanor for assigning prior record level points.

While "[t]here is no question that a worksheet, prepared and submitted by the State, purporting to list a defendant's prior convictions is, without more, insufficient to satisfy the State's burden in establishing proof of prior convictions[,]" *State v. Eubanks*, 151 N.C. App. 499, 505, 565 S.E.2d 738, 742 (2002), the State is permitted to provide a computerized worksheet to the trial court in order to prove a prior out-of-state conviction. *State v. Rich*, 130 N.C. App. 113, 116, 502 S.E.2d 49, 51, *disc. review denied*, 349 N.C. 237, 516 S.E.2d 605 (1998) (computerized printout with the heading "DCI—Record" and containing various identifying characteristics of the defendant held to be a copy of a Division of Criminal Information record and competent to prove prior convictions).

In the instant case, prior to defendant's trial testimony, the trial court conducted a *voir dire* hearing in which the parties discussed the introduction of evidence regarding defendant's prior conviction for possession of stolen property in the fifth degree. The State informed the trial court that it was "pulling the DCI records[,]" and that "a copy of [defendant's] record from New York indicates that it's a Class B felony in New York." The trial court thereafter determined that the charge "would be a grade of felony" and it admitted into evidence the record provided by the State. Following defendant's conviction for robbery with a firearm, the State submitted a judgment and commitment worksheet to the trial court. The judgment and commitment sheet indicated that, by virtue of the one point assigned to the prior possession of stolen property in the fifth degree conviction, defendant possessed a prior felony record level II. Defendant objected to the submission of the worksheet, arguing that "the State has not proven that [possession of stolen property in the fifth degree] is a Class [1] misdemeanor under the law." The trial court readmitted the record provided by the State, and, after being informed that the record was provided by "NCIC," the trial court found that the record "has reasonable guarantees of trustworthiness." Without other evidence, the trial court thereafter concluded that the prior conviction "would be at least" a Class 1 misdemeanor in North Carolina, and therefore the trial court determined that defendant had a prior felony record level II. On appeal, defendant does not challenge the State's proof of his prior conviction for possession of stolen property in New York. Instead, defendant contends that the State failed to demon-

strate that the offense "is substantially similar" to a Class 1 misdemeanor in North Carolina.

We note that NY CLS Penal § 165.40 (2003) provides that "[c]riminal possession of stolen property in the fifth degree is a class A misdemeanor." Although the State presents an argument in its brief comparing the elements of NY CLS Penal § 165.40 with the elements of N.C. Gen. Stat. § 14-72(a) (2003), no such argument was presented to the trial court during defendant's trial. Instead, the trial court considered only the State's judgment and commitment sheet and a copy of defendant's record, which the State incorrectly asserted "indicates that [the crime is] a Class B felony in New York." In light of the foregoing, we conclude that the State failed to produce sufficient evidence tending to show that defendant's prior conviction for possession of stolen property in the fifth degree was substantially similar to a Class 1 misdemeanor in North Carolina. Therefore, defendant is entitled to a new sentencing hearing, during which both parties may present that evidence necessary to determine whether the offense is substantially similar to a Class 1 misdemeanor in North Carolina.

In light of the foregoing conclusions, we hold that defendant received a trial free of prejudicial error, but we remand the case for a new sentencing hearing.

No error at trial; remand for new sentencing hearing.

Judges BRYANT and LEVINSON concur.