STATE v. PRENTICE

[170 N.C. App. 593 (2005)]

No. COA04-764

(Filed 7 June 2005)

**1. Evidence— videotape—still photographs from videotape— authentication**

The trial court did not err in a first-degree rape, double first-degree sexual offense, and taking indecent liberties with a minor case by admitting a videotape and still photographs taken from the videotape as substantive evidence of the alleged crimes, because: (1) an agent's testimony established an unbroken chain of custody from the time the tape was found in defendant's residence; (2) there was ample testimony to establish the identities of defendant, the minor child, and defendant's residence depicted on the videotape; (3) there was testimony that defendant's camcorder was in working condition; and (4) there was sufficient evidence from the testimony regarding chain of custody to establish the videotape had not been edited or altered, and that the videotape seized from defendant's residence was the same videotape reviewed by the jury.

**2. Arrest— Interstate Agreement on Detainers—detainer**

The trial court did not violate the Interstate Agreement on Detainers (IAD) or unconstitutionally evade the operation of that statute by arraigning defendant in Orange County District Court and returning defendant to federal custody without resolving his first-degree rape, double first-degree sexual offense, and taking indecent liberties with a minor case, because "detainer" does not include the arrest warrant served on defendant in this case when: (1) although defendant did have an untried indictment pending in Orange County when he was served with the order while in federal custody, there is nothing in the record to suggest that the

order for arrest was ever filed with the Federal Bureau of Prisons or any institution; and (2) there is nothing in the record to suggest that the State requested federal officials to hold defendant at the end of his federal sentence or notify it prior to defendant's release from federal custody.

Appeal by defendant from judgment entered 28 October 2003 by Judge Ronald L. Stephens in Orange County Superior Court. Heard in the Court of Appeals 14 February 2005.

*Attorney General Roy Cooper, by Assistant Attorney General Amy C. Kunstling, for the State.*

*Miles & Montgomery, by Mark Montgomery, for defendant-appellant.*

MARTIN, Chief Judge.

Defendant appeals from his convictions of first-degree rape, two counts of first-degree sexual offense, and one count of taking indecent liberties with a minor. Defendant argues that video tape evidence of him committing the sexual acts complained of was not properly authenticated and that the trial court erred in failing to dismiss the charges under section 15A-761 of the North Carolina General Statutes, the Interstate Agreement on Detainers. We find no error by the trial court.

The pertinent factual and procedural history of the instant case is as follows: On 7 August 2001, defendant pled guilty to federal child pornography charges in the United States District Court for the Middle District of North Carolina and was sentenced to 210 months in prison. After sentencing, defendant was transferred as a federal prisoner to the Orange County jail, pursuant to a housing agreement between the United States government and Orange County. On 27 August 2001, the grand jury returned state indictments against defendant. The Orange County sheriff served defendant with an order for arrest on 28 August 2001. The following day, defendant appeared in state court, where he was informed of the charges against him and appointed an attorney. He was then returned to the Orange County jail and federal custody.

On 10 September 2001, federal authorities transported defendant from the Orange County jail to a federal prison in Kentucky. On 28 May 2003 the State prepared a writ of habeas corpus *ad prosequen-*

*dum* to secure defendant's presence in state court, and defendant was transferred to state custody pursuant to that writ on 15 July 2003. Defendant remained in state custody through his trial, which ended 28 October 2003.

The State's evidence at trial tended to show that defendant was the subject of a child pornography distribution investigation by the United States Postal Inspector. Defendant responded to an electronic mail ("e-mail") offering a video tape entitled "Number Fourteen, Teen Sex." Agents from the State Bureau of Investigation ("SBI") and postal inspectors subsequently searched defendant's residence, where the inspectors discovered several video tapes secured within a safe.

An SBI agent involved on the case, Mike Smith ("Agent Smith"), reviewed one of the video tapes and attempted to identify the persons depicted in it. The video tape showed a grown male, later identified as defendant, and a pre-pubescent female engaged in various sexual acts, including digital and penile penetration of the girl's vagina by defendant. Agent Smith testified he took still photographs made from the video tape to several of defendant's close acquaintances in an attempt to identify the young girl. Defendant's former girlfriend identified the girl as her daughter, K.H., and verified that the male in the video tape was defendant. K.H.'s grandmother also identified K.H. as the girl in the photograph.

K.H.'s mother testified at trial that she and her two daughters moved in with defendant in October 1999. K.H. was two to three years old during the time she resided with defendant. K.H.'s mother testified her daughter appeared to be three years old in the video tape. She identified a checked flannel shirt, worn by the girl in the video tape, as one belonging to K.H. She further stated the furnishings and decorations in the still photographs, taken from the video tape, appeared to be the same furnishings and decorations in defendant's bedroom at the time they were living there. According to K.H.'s mother, defendant also owned a camcorder and a tripod, which he had used to videotape the two of them having sexual intercourse in his bedroom. She stated she had no personal knowledge of whether defendant ever videotaped himself with K.H. and that she never observed defendant engage in any sexual activity with her daughter.

The State played the video tape at trial over defendant's objection. Defendant did not testify and presented no evidence. Upon review of the evidence, the jury found defendant guilty of all charges

and he was sentenced on 28 October 2003 to a term of 384 to 470 months in prison. Defendant appeals.

---

**[1]** Defendant argues the trial court erred by admitting the video tape and still photographs taken from the video tape into evidence. He further contends the State violated the Interstate Agreement on Detainers. For the reasons stated herein, we find no error.

### A. Video Tape Evidence

Defendant first contends the trial court erred in admitting the video tape seized from his residence, as well as still photographs taken from that video tape, as substantive evidence of the alleged crimes. Defendant argues the State failed to properly authenticate the video tape prior to its introduction into evidence. We do not agree.

Video tapes are admissible as substantive evidence as long as applicable evidentiary requirements are met. *See* N.C. Gen. Stat. § 8-97 (2003). Rule 901 of the North Carolina Rules of Evidence requires "authentication or identification as a condition precedent to admissibility" of evidence. N.C. Gen. Stat. § 8C-1, Rule 901(a) (2003). The authentication or identification requirement is satisfied by "evidence sufficient to support a finding that the matter in question is what its proponent claims." *Id.* The General Assembly lists ten examples of authentication conforming with the rule, but is careful to note that the examples are "[b]y way of illustration only, and not by way of limitation . . . ." N.C. Gen. Stat. § 8C-1, Rule 901(b) (2003). Proper authentication of video tape evidence includes:

> (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed (illustrative purposes); (2) proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape; (3) testimony that the photographs introduced at trial were the same as those the witness had inspected immediately after processing (substantive purposes); or (4) testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed.

*State v. Cannon*, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-09 (1988) (citations and internal quotations omitted), *reversed on other grounds*, 326 N.C. 37, 387 S.E.2d 450 (1990); *see also State v. Mason*, 144 N.C. App. 20, 26, 550 S.E.2d 10, 15 (2001) (noting there are "three

**STATE v. PRENTICE**

[170 N.C. App. 593 (2005)]

significant areas of inquiry for a court reviewing the foundation for admissibility of a videotape: (1) whether the camera and taping system in question were properly maintained and were properly operating when the tape was made, (2) whether the videotape accurately presents the events depicted, and (3) whether there is an unbroken chain of custody"); *State v. Sibley*, 140 N.C. App. 584, 586, 537 S.E.2d 835, 837-38 (2000) (same).

We also note that our Supreme Court, in addressing the admissibility of *audio*tapes, has stated that " '[u]nder Rule 901, testimony as to accuracy based on personal knowledge is all that is required to authenticate a tape recording, and a recording so authenticated is admissible if it was legally obtained and contains otherwise competent evidence.' " *State v. Jones*, 358 N.C. 330, 344-45, 595 S.E.2d 124, 134 (quoting *State v. Stager*, 329 N.C. 278, 317, 406 S.E.2d 876, 898 (1991)), *cert. denied*, —— U.S. ——, 160 L. Ed. 2d 500 (2004). Under this line of cases, any "conflict in the evidence goes to the weight and credibility of the evidence not its admissibility." *Stager*, 329 N.C. at 317, 406 S.E.2d at 898.

Defendant argues the State failed to introduce (1) sufficient evidence of an unbroken chain of custody; (2) testimony that the video tape accurately presents the events depicted; and (3) testimony that the video tape had not been altered. We disagree.

Agent Smith testified he was present when postal inspectors discovered the video tape in question, which was a "VHS-C" type, along with other video tapes, in a safe in defendant's bedroom. The video tapes were photographed in the safe, and then removed by postal inspectors. The video tape remained in postal inspector custody until brought to Agent Smith by the postal inspector. Agent Smith recognized the video tape as being the same one seized from defendant's residence. The two reviewed the video tape at Agent Smith's office. Agent Smith then took all of the video tapes to the SBI's digital evidence laboratory, and he provided detailed testimony about the chain of custody of the video tape at the SBI. Agent Smith then maintained custody of the video tape until trial.

Agent Smith further testified that the room depicted in the video tape shown to the jury was identical to the master bedroom in defendant's residence and that the man in the video tape was defendant. K.H.'s mother testified defendant owned a camcorder (the type of machine on which "VHS-C" tapes are recorded) and a tripod, which he had used to videotape them having sexual intercourse in the mas-

ter bedroom of defendant's residence. She also identified the room depicted in the video tape as defendant's master bedroom and the man on the video tape as defendant. K.H.'s mother identified the young girl on the video tape as K.H.

The testimony of Agent Smith establishes an unbroken chain of custody from the time the tape was found in defendant's residence. Further, there was ample testimony to establish the identities of defendant, the girl, and defendant's residence depicted on the video tape. There was also testimony to establish that defendant's camcorder was in working condition. Finally, there was sufficient evidence from the testimony regarding chain of custody to establish the video tape had not been edited or altered, and that the same video tape seized from defendant's residence was the same video tape reviewed by the jury. We conclude the trial court properly admitted the video tape and the photographs taken therefrom, and we overrule defendant's first assignment of error.

### B.  Interstate Agreement on Detainers

[2] Defendant next contends the State violated the Interstate Agreement on Detainers ("IAD") or unconstitutionally evaded the operation of that statute by arraigning defendant in Orange County District Court and returning defendant to federal custody without resolving his case. Specifically, defendant contends his charges should have been dismissed on the ground he was in federal custody when the State served him with the order for arrest. Defendant argues the order for arrest acted as a "detainer" and brought him into the jurisdiction of the State such that his subsequent return to federal custody without trial violated the provisions of Article IV of the IAD. We disagree.

The IAD is a compact entered into by North Carolina, forty-eight other states, the United States government, and the District of Columbia, and establishes a procedure for resolution of one state's outstanding charges against a prisoner of another state or the United States. See N.C. Gen. Stat. § 15A-761 (2003) (codifying IAD); see also New York v. Hill, 528 U.S. 110, 111, 145 L. Ed. 2d 560, 564 (2000). For our purposes, Article IV of the agreement provides Orange County, North Carolina, as the "jurisdiction in which an untried indictment . . . is pending," a procedural mechanism to have a defendant brought from another jurisdiction where he is already serving a sentence: here, the federal government. N.C. Gen. Stat. § 15A-761, art. IV(a).

Defendant is correct in asserting that once the prisoner arrives in the jurisdiction of the receiving state (the state in which the charges are pending), trial on those charges must commence within 120 days. *See* N.C. Gen. Stat. § 15A-761, art. IV(c) (2003). Also, "[i]f trial is not had on any indictment . . . prior to the prisoner's being returned to the original place of imprisonment . . . such indictment . . . shall not be of any further force or effect, and the court shall enter an order dismissing the same with prejudice." N.C. Gen. Stat. § 15A-761, art. IV(e) (2003). The provisions of the IAD are triggered only, however, when a "detainer" is filed with the sending state or institution by the receiving state. *United States v. Mauro*, 436 U.S. 340, 343, 56 L. Ed. 2d 329, 336 (1978).

Although no court has ever precisely determined what type of notice or request serves as a "detainer," thereby triggering the IAD, the United States Supreme Court has held that a federal writ of habeas corpus *ad prosequendum* is not a detainer for purposes of the IAD. *Mauro*, 436 U.S. at 361, 56 L. Ed. 2d at 347. The Court has also noted that "the Government need not proceed by way of the Agreement. . . . It is only when the Government does file a detainer that it becomes bound by the Agreement's provisions." *Id.* at 364 n. 30, 56 L. Ed. 2d at 349 n. 30.

Here, the State contends it never filed a detainer with any institution or sending state. It argues defendant was brought to appear for trial via a writ of habeas corpus *ad prosequendum*, thus never triggering the IAD. Defendant does not dispute the writ, but argues that the state arrest warrant, served on defendant twenty-one months before he was brought to trial and while he was in federal custody, either was a "detainer" or acted as one within the spirit of the IAD.

A detainer has been explained as a "legal order that requires a State in which an individual is currently imprisoned to hold that individual when he has finished serving his sentence so that he may be tried by a different State for a different crime." *Alabama v. Bozeman*, 533 U.S. 146, 148, 150 L. Ed. 2d 188, 192 (2001); *see also Mauro*, 436 U.S. at 359, 56 L. Ed. 2d at 346 (defining detainer as " 'a notification filed with the institution in which a prisoner is serving a sentence, advising that he is wanted to face pending criminal charges in another jurisdiction' " (internal citation omitted)).

Although this Court has never considered the issue of whether an arrest warrant or order for arrest acts as a detainer, cases from other jurisdictions are instructive. The District of Columbia Court of

Appeals construing Article III of the IAD has held that an arrest warrant serves as a detainer, and therefore triggers the provisions of the IAD, only if:

1) it is based on an untried information, indictment, or complaint; 2) it is filed by a criminal justice agency; 3) it is filed directly with the facility where a prisoner is incarcerated; 4) it notifies prison officials that a prisoner is wanted to face pending charges; and 5) it asks the institution where the prisoner is incarcerated either to hold the prisoner at the conclusion the prisoner's sentence, or to notify agency officials when the prisoner's release is imminent.

*Tucker v. U.S.*, 569 A.2d 162, 165 (D.C. App. 1990). In *Tucker*, detectives with the District of Columbia Police Department went to South Carolina to interview a defendant being held for trial on charges in South Carolina. As a courtesy to the officers in South Carolina, the District detectives took copies of the arrest warrants filed in D.C. against the defendant. *Id.* at 164-65. The defendant argued that leaving the arrest warrants with the South Carolina police, who actually forwarded them to the state corrections facility, acted as a detainer. The *Tucker* Court rejected that argument, instead adopting the criteria above. *Id.*

Looking to the order for arrest used in this case, it appears only the first criteria from *Tucker* is met. Defendant did have an untried indictment pending in Orange County when he was served with the order while in federal custody. However, there is nothing in the record to suggest that the order for arrest was ever filed with the Federal Bureau of Prisons, or any institution. There is also nothing in the record to suggest that the State requested federal officials to hold defendant at the end of his federal sentence or notify it prior to defendant's release from federal custody. Accordingly, we do not construe "detainer" to include the arrest warrant served on defendant in this case. N.C. Gen. Stat. § 15A-761, art. IX (2003); *Tucker*, 569 A.2d at 165. The order for arrest served on defendant while in the Orange County jail was not a detainer, and the provisions of the IAD are not applicable to defendant. We overrule defendant's second assignment of error.

In conclusion, the order for arrest served on defendant while in the Orange County jail was not a detainer, and the provisions of the IAD are not applicable to defendant. Further, the trial court properly admitted a video tape depicting defendant engaged in the criminal act

for which he was convicted. In the judgment of the trial court we therefore find

No error.

Judges McCULLOUGH and ELMORE concur.