STATE OF NORTH CAROLINA
v.
KENNETH ERSKIN STURDIVANT, JR.
No. COA08-1422
Court of Appeals of North Carolina.
Filed June 16, 2009
This case not for publication
Attorney General Roy Cooper, by Assistant District Attorney Robert Taylor, for State.
Anne Bleyman, for defendant.
ERVIN, Judge.
On 8 June 2006, Lexington Police Department (LPD) Officer Jerrard Hodge (Officer Hodge) was working undercover purchasing illegal drugs on Martin Luther King Drive in Thomasville. Officer Hodge and LPD Detective Kirk Woodall were working with the Thomasville Police Department (TPD) and occupied an unmarked police vehicle equipped with video and audio recording devices. TPD Officer Jason Baity (Officer Baity) was also part of the surveillance team.
A black male approached the driver's side of the car. After the officers asked him for "a twenty," the man handed the officers an off-white rock-like item that the LPD officers suspected of being crack cocaine in exchange for $20.00. Officer Hodge gave a description of the man and his clothing over the wire to Officer Baity. Officer Baity then went to the scene, located a man fitting the description given by Officer Hodge, and asked him for identification. The man with whom Officer Baity spoke on this occasion was Defendant, Kenneth Erskin Sturdivant, Jr. (Defendant).
Prior to trial, Defendant filed a Motion in Limine seeking the entry of an order precluding the introduction of the audio tape recording or a transcript of the exchange between Officer Hodge and the individual alleged to be Defendant. The trial court denied the Motion in Limine after deciding that the tape's "prejudicial effect [was] outweighed by [its] probative value." At trial, Officer Hodge identified Defendant as the individual shown on the videotape of the transaction which he described during his testimony.
Officer Baity mailed the suspected crack cocaine to the State Bureau of Investigation (SBI). A laboratory analysis of the suspected crack rock completed by SBI chemist Amanda Smith revealed the presence of cocaine in an amount weighing less than .1 gram. Defendant did not present any evidence at trial.
At the conclusion of the trial, the jury convicted Defendant of selling cocaine and of attaining the status of an habitual felon. On 11 June 2008, the trial court sentenced Defendant to a minimum term of 121 months and a maximum term of 155 months imprisonment in the custody of the Department of Correction and required Defendant to undergo substance abuse treatment. In addition, the trial court ordered Defendant to make certain monetary payments, including restitution payments in the amount of$20.00 to the TPD and $300.00 to the SBI. Defendant noted an appeal to this Court from the trial court's judgment.

Discussion

Entry of Judgment and Commitment in Incorrect File
Defendant first contends that the trial court erred by entering its judgment and commitment under the habitual felon case number as opposed to the case number of the substantive felony for which Defendant was convicted. Although the jury returned verdicts finding defendant guilty of the sale of cocaine in File No. 06 CrS 5582 and of attaining the status of an habitual felon in File No. 06 CrS 8364, the judgment was given the habitual felon case number rather than the sale of cocaine case number. As a result of the fact that a "trial court has subject matter jurisdiction to sentence a defendant only on his criminal convictions, not upon his acquired status of being an habitual felon," State v. Taylor, 156 N.C. App. 172, 175, 576 S.E.2d 114, 117 (2003), Defendant argues that the trial court lacked "subject matter jurisdiction to enter judgment only under a habitual felon case number." As Defendant acknowledges, however, established North Carolina law indicates that the trial court's error was clerical rather than jurisdictional in nature. State v. McBride, 173 N.C. App. 101, 109-11, 618 S.E.2d 754, 760-761 (2005), dis. review denied, 360 N.C. 179, 626 S.E.2d 835 (2005) (trial court committed clerical error by entering judgment against a defendant convicted of possession of cocaine and drug paraphernalia and of having attained the status of being an habitual felon in the habitual felon case rather than the substantive felony case). "When, on appeal, a clerical error is discovered in the trial court's judgment or order, it is appropriate to remand the case to the trial court for correction because of the importance that the record speak the truth." State v. Streeter, ___ N.C. App. ___, ___, 663 S.E.2d 879, 886 (2008) (citing State v. Smith, 188 N.C. App. 842, 656 S.E.2d 695 (2008)). As a result, this case should be remanded to the trial court with directions to enter and file the judgment and commitment entered against Defendant in File No. 06 CrS 5582 rather than File No. 06 CrS 8364. See McBride, at 110, 618 S.E.2d at 760.

Restitution
Next, Defendant assigns error to that portion of the trial court's judgment requiring Defendant to make a $300.00 payment to the SBI. In support of this assignment of error, Defendant notes that he did not stipulate to the amount of the payment, which he characterizes as restitution, to be awarded to the SBI, and argues that there was no evidence at trial to support the $300.00 amount other than the prosecutor's unsworn statement. As a result, Defendant contends that the trial court erred by ordering the payment of $300.00 to the SBI. After careful consideration of Defendant's contentions, we disagree.
As a general proposition, "`[r]egardless of whether restitution is ordered or recommended by the trial court, the amount must be supported by the evidence.'" State v. Wilson, 340 N.C. 720, 726, 459 S.E.2d 192, 196 (1995) (quoting State v. Daye, 78 N.C. App. 753, 757, 338 S.E.2d 557, 560, disc. review allowed, 316 N.C. 554, 344 S.E.2d 11, aff'd per curiam, 318 N.C. 502, 349 S.E.2d 576 (1986). "In the absence of an agreement or stipulation between defendant and the State, evidence must be presented in support of an award of restitution." State v. Buchanan, 108 N.C. App. 338, 341, 423 S.E.2d 819, 821 (1992). The unsworn statement of a prosecutor is insufficient to support a decision to require the payment of a specific amount of restitution. State v. Shelton, 167 N.C. App. 225, 233, 605 S.E.2d 228, 233 (2004) (citing State v. Buchanan, 108 N.C. App. 338, 423 S.E.2d 819 (1992)). Although Defendant correctly notes that there is no evidence in the record tending to show the cost of the laboratory analysis work performed by the SBI on the material that Defendant handed to Officer Hodge, the general rule upon which Defendant relies does not apply in this instance.
N.C. Gen. Stat. § 7A-304(7) provides:
For the services of the State Bureau of Investigation laboratory facilities, the. . . superior court judge shall, upon conviction, order payment of the sum of three hundred dollars ($300.00) to be remitted to the Department of Justice . . . . This cost shall be assessed only in cases in which, as part of the investigation leading to the defendant's conviction, . . . the laboratories have performed analysis of any controlled substance possessed by the defendant or the defendant's agent. The court may waive or reduce the amount of any payment required . . . upon a finding of just cause to grant such a waiver.
N.C. Gen. Stat. § 7A-304(7). As a result, N.C. Gen. Stat. § 7A-304(7) permits a trial judge to require the payment of $300.00 to be remitted to the Department of Justice in the event that the SBI crime laboratory performed an analysis of any controlled substances possessed by the defendant or an agent of the defendant. At trial, SBI Agent Amanda Smith testified that she analyzed the substance sold by Defendant to Officer Hodge and determined that it "contained Cocaine base, which is a Schedule II controlled substance . . . ." This fact, coupled with Defendant's conviction for sale or delivery of cocaine, provides all the record support needed to justify the trial court's decision to require Defendant to pay $300.00 to the SBI, particularly given that the record provides no indication that Defendant requested a waiver in or reduction of the statutorily mandated fee. As a result, the trial court did not err by requiring Defendant to make this $300.00 payment, so that Defendant's assignment of error directed to this aspect of the trial court's judgment is overruled.

Admissibility of the Videotape
At trial and on appeal, Defendant argues that the trial court erred by admitting the videotape of the transaction between Defendant and Officer Hodge into evidence.[1] Defendant contends that the State failed to adequately authenticate the videotape and that the admission of this improperly authenticated videotape constituted prejudicial error. After careful consideration of Defendant's contentions and the applicable law, we disagree.
"Any party may introduce a . . . video tape . . . as substantive evidence upon laying a proper foundation and meeting other applicable evidentiary requirements." N.C. Gen. Stat. §8-97. "Videotapes are admissible under North Carolina law for both illustrative and substantive purposes." State v. Gaither, 161 N.C. App. 96, 102, 587 S.E.2d 505, 509 (2003), disc. review denied, 358 N.C.157, 593 S.E.2d 83 (2004)).
Videotapes should be admissible under the rules and for the purposes of any other photographic evidence. State v. Johnson, 18 N.C. App. 606, 197 S.E.2d 592 (1973). The prerequisite that the offeror lay a proper foundation for the videotape can be met by: (1) testimony that the motion picture or videotape fairly and accurately illustrates the events filmed, Campbell v. Pitt County Memorial Hospital, 84 N.C. App. 314, 352 S.E.2d 902, aff'd, 321 N.C. 260, 362 S.E.2d 273 (1987) (illustrative purposes); (2) "proper testimony concerning the checking and operation of the video camera and the chain of evidence concerning the videotape. . .," State v. Luster, 306 N.C. 566, 569, 295 S.E.2d 421, 423 (1982); (3) testimony that "the photographs introduced at trial were the same as those [the witness] had inspected immediately after processing," State v. Kistle, 59 N.C. App. 724, 726, 297 S.E.2d 626, 627 (1982), disc. [review] denied, 307 N.C. 471, 298 S.E.2d 694 (1983)(substantive purposes); or (4) "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area `photographed.'" State v. Johnson, 18 N.C. App. 606, 608, 197 S.E.2d 592, 594 (1973).
State v. Cannon, 92 N.C. App. 246, 254, 374 S.E.2d 604, 608-609 (1988), rev'd on other grounds, 326 N.C. 37, 387 S.E.2d 450 (1990) (emphasis added). This Court in State v. Mason, 144 N.C. App. 20, 26, 550 S.E.2d 10, 14 (2001), explained the Cannon standard by stating that:
[There are] three significant areas of inquiry for a court reviewing the foundation for admissibility of a videotape: (1) whether the camera and taping system in question were properly maintained and were properly operating when the tape was made, (2) whether the videotape accurately presents the events depicted, and (3) whether there is an unbroken chain of custody.
Mason, 144 N.C. App. at 26, 550 S.E.2d at 14 (2001). As a result, the admissibility of the videotape depends upon the nature and content of the evidence presented in support of its admissibility.
Prior to trial, Defendant filed a motion in limine in reliance on N.C. Gen. Stat. §§ 8C-1, Rules 401, 402, and 403, challenging the admission of the videotape on the grounds that "live testimony would be the best evidence," since "direct testimony will be subject to cross examination," and that "[t]he tape and transcript if offered for corroborative purposes would only serve to bolster the State's witness and its cumulative or repetitious nature might only prejudice the jury." After the trial court denied Defendant's motion in limine on the grounds that the "prejudicial effect [of the videotape was] outweighed by [its] probative value," the State attempted to obtain the admission of the videotape into evidence. On direct examination, Officer Hodge testified in pertinent part:
Q: And we previously discussed that the vehicle you were driving was specially equipped with surveillance. Was it equipped with a video recording device?
A. Yes, ma'am.
Q. And was the video recording device on at that time?
A. Yes, ma'am.
Q. And prior to today have you had an opportunity to observe that video?
A. Yes, ma'am.
Q. Is that a fair and accurate recording of the transaction that took place on June 8th, 2006?
A. Yes, ma'am.
MS. DUFF: Your honor, may I approach the witness?
THE COURT: You may.
Q: I am now handing you what has been previously marked as State's Exhibit 1 for identification purposes. Do you know what that is?
A. It is a videotape of the day's events on June 8th, 2006. (State's Exhibit No. 1 was marked for identification.)
Q. Has that tape in any way been altered or is it a fair and accurate representation?
A. (Witness nods.)
MS. DUFF: The State would ask State's Exhibit 1 
THE COURT: To be admitted.
MS. DUFF:  to be admitted into evidence.
THE COURT: Anything for the defendant? Subject to prior objections?
MR. KEITH: Your Honor, we would like to object further, I guess, outside the presence of the jury.
THE COURT: Approach the bench, please.
(Discussion off the record at the bench.)
THE COURT: Do you want to ask any additional questions, Madam DA?
MS. DUFF: Yes, your Honor. Thank you.
Q. And, Officer Hodge, I believe I asked you earlier but have you watched State's Exhibit 1 prior to today's proceedings?
A. Yes, ma'am.
Q. And is it a fair and accurate representation of what took place that day?
A. Yes, ma'am.
Q. And to your knowledge when you watched the tape was the tape changed, modified or altered in any way, form or fashion?
A. No, ma'am.
Q. Was this video part of the investigation of this matter?
A. Yes, ma'am.
Q. And was it kept in the ordinary course of business of the agency?
A. Repeat that, please?
Q. Was the tape kept in the ordinary course and business of the agency?
A. Yes, ma'am.
MS. DUFF: I again now offer State's Exhibit Number 1 into evidence.
THE COURT: Anything further for the defendant?
MR. KEITH: We just renew our objection for the record.
THE COURT: Yes, sir. I will allow your motion to admit State's Exhibit 1. . . .
After carefully considering Defendant's arguments, we conclude that they do not justify awarding Defendant a new trial. According to N.C.R. App. P. 10(b)(1), "[i]n order to preserve a question for appellate review, a party must have presented to the trial court a timely request, objection or motion, stating the specific grounds for the ruling the party desired the court to make . . . ." Prior to trial, Defendant sought the exclusion of the videotape on a number of grounds. However, Defendant's motion in limine does not contain an authentication objection. At the time that the State initially sought to obtain the admission of the videotape into evidence, Defendant lodged a general objection and asked to be heard out of the presence of the jury. After counsel approached the bench at the request of the trial court, the prosecutor posed some additional questions directed toward the authentication issue to Officer Hodge. At the conclusion of this additional direct examination, the State renewed its request that the videotape be admitted into evidence. Although the trial court specifically inquired whether there was "[a]nything further for the defendant," Defendant simply "renew[ed his] objection for the record." The only objections that Defendant had clearly advanced to the admission of the videotape to that point were those specified in his motion in limine, which sought the exclusion of the videotape on "best evidence" and "undue prejudice" grounds. Although Defendant may have attacked the adequacy of the State's attempt to authenticate the videotape at the time his counsel approached the bench during the examination of Officer Hodge, that fact is not disclosed by the record. After the State's additional authenticating questions, Defendant did not request permission to pose any questions on voir dire examination or explicitly argue that the State's efforts to authenticate the videotape were inadequate. Having failed to advance an authentication-based objection at trial, Defendant is not permitted to challenge the admission of the videotape on authentication grounds on appeal. State v. Battle, 172 N.C. App. 335, 338, 615 S.E.2d 733, 735 (2005),vacated and remanded on other grounds, 361 N.C. 168, 641 S.E.2d 7 (2006) (stating that, "[b]ecause [the] defendant's objection at trial was based on hearsay, a theory different from that advanced on appeal, we must hold that [the] defendant has not properly preserved the issue for review and we will not consider his argument"); State v. Catoe, 78 N.C. App. 167, 168, 336 S.E.2d 691, 692 (1985), disc. review denied, 316 N.C. 380, 344 S.E.2d 1 (1986) (holding that the defendant may not argue a particular alleged error "on appeal where the underlying objection fails to present the nature of the alleged error to the trial court[.]" This rule "serves to facilitate proper rulings and to enable opposing counsel to take proper corrective measures to avoid retrial"). As a result, we conclude that Defendant has failed to adequately preserve his authentication challenge to the admission of the videotape for purposes of appellate review.
Morever, even if one assumes that Defendant had sufficiently raised the authentication issue before the trial court, we believe that the trial court correctly overruled any authentication-based objection that Defendant may have advanced. At the time that the State sought the admission of the videotape, Officer Hodge testified that the videotape of his encounter with Defendant was "a fair and accurate recording of the transaction that took place on June 8th, 2006;" that he had "watched State's Exhibit 1 prior to [that day's] proceedings;" that the videotape was "a fair and accurate representation of what took place on that day;" that the videotape had not been "changed, modified or altered in any way, form or fashion;" and that the videotape had been "kept in the ordinary course of business of the agency." A careful reading of this Court's opinion in Cannon indicates that the four authentication methods set out there are stated in the disjunctive, which suggests that proof of any one of them would suffice to support the admission of a videotape into evidence.[2] The prior decisions of this Court confirm that reading of the Cannon opinion. In Cannon itself, for example, there is no reference to "testimony that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed." Cannon, 92 N.C. App. at 254, 374 S.E.2d at 609 (quotations omitted). Similarly, this Court's discussion of the authenticating evidence deemed sufficient in State v. Redd, 144 N.C. App. 248, 251, 549 S.E.2d 875, 878 (2001), did not contain any reference to testimony addressing the same criterion. For that reason, Defendant's argument that the trial court erred in admitting the videotape because the State failed to elicit evidence of each prong set out in the Cannon opinion rests on a misreading of the Court's discussion of the authentication issue.
At an absolute minimum, Officer Hodge's testimony provided evidence "that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed."Cannon, 92 N.C. App. at 254, 374 S.E.2d at 609 (quotations omitted). In addition, the unchallenged testimony of Officer Hodge to the effect that the videotape had not been "changed, modified or altered in any way, form or fashion;" that "this video [was] part of the chain of custody of this matter;" and that "it [was] kept in the ordinary course of business of the agency" provides some evidence of an adequate chain of custody of the type referenced in the second Cannon criterion. The fact that there was no evidence concerning the working of the camera that filmed Officer Hodge's interaction with Defendant or setting out the chain of custody of the videotape in minute detail merely goes to the weight to be given to the videotape rather than to its admissibility. See State v. Ayscue, 169 N.C. App. 548, 552, 610 S.E.2d 389, 393 (2005) (videotape admitted into evidence despite absence of evidence that the camera was working properly).
Furthermore, while the testimony of Office Hodge did not address all three of the "areas of inquiry" discussed in Mason, 144 N.C. App. at 26, 550 S.E.2d at 14, nothing in this Court's decision addressing the admissibility of videotapes in any way indicates that the presentation of testimony directed to each of those subject areas is a prerequisite to the admission of such evidence. See State v. Prentice, 170 N.C. App. 593, 598, 613 S.E.2d 498, 501-502 (2005), appeal dismissed and disc. review denied, 360 N.C. 74, 622 S.E.2d 628 (2005) (videotape properly admitted into evidence for substantive purposes where State established an unbroken chain of custody, provided evidence that the videotape had not been edited or altered, proved the camera was in working order, and established the identities of the individuals depicted on the videotape); Ayscue, 169 N.C. App. at 552, 610 S.E.2d at 393 (videotape properly admitted for substantive purposes where State presented evidence that the videotape was taken into custody on the date of the robbery, had been in the custody of law enforcement since that date, and had not been altered or changed); State v. Mewborn, 131 N.C. App. 495, 499, 507 S.E.2d 906, 909 (1998) (videotape properly admitted for substantive purposes where State presented evidence that the camera was operating properly on the day of the robbery, that standard procedures had been followed to safeguard the tape, and that the images on the videotape "had not been altered and were in the same condition as when [the witness] first viewed them on the day of the robbery");Cannon, 92 N.C. App. at 254, 274 S.E.2d at 609 (videotape properly admitted for substantive purposes where State presented evidence that the camera was in proper working order on the occasion in question and the videotape had been held in police custody since the robbery in question). Instead, Mason simply describes "three significant areas of inquiry," which we understand to be a reference to potential issues that might arise during the trial court's consideration of the admissibility of videotape evidence rather than rigid criteria that must be addressed during each and every attempt to procure the admission of a videotape into evidence. Even so, Officer Hodge's testimony does adequately address the "accurate presentation" and "chain of custody" issues specified in Mason and, in the absence of any more specific challenge from Defendant, suffices to support the trial court's decision to admit the videotape of Officer Hodge's encounter with Defendant. At bottom, we believe that the evidence offered by the State for the purposes of authenticating the videotape to the effect that the videotape had been held in police custody, that the videotape accurately depicted the events that occurred in Officer Hodge's presence, and that the videotape had not been altered in any way sufficed to support the videotape's admission into evidence under Cannon and Mason. As a result, we believe that the testimony of Officer Hodge sufficiently authenticated the videotape to support the trial court's decision to admit it into evidence.[3] This assignment of error is, therefore, overruled.[4]

Conclusion
Thus, for the reasons set forth above, we find no prejudicial error in the proceedings leading to the entry of judgment against Defendant.
No Prejudicial Error. Remand to Trial Court for Correction of Clerical Error on Judgment and Commitment.
Judges Elmore and Stroud concur.
Report per Rule 30(e).
NOTES
[1] The videotape was clearly admitted for substantive rather than illustrative purposes, given that Officer Hodge used the videotape as a basis for identifying Defendant as the individual from whom he purchased the crack rock.
[2] To be sure, the first Cannon criterion is only applicable to instances in which the offering party seeks to have the videotape admitted for illustrative purposes only. Cannon, 92 N.C. App. at 254, 374 S.E.2d at 608-609. Although only one of the other three Cannon criteria makes a specific reference to the admission of a videotape for substantive purposes, the absence of any limitation on the purposes for which a videotape authenticated using those two methods in the Cannon opinion coupled with the nature of those two methods indicates that videotapes authenticated using those criteria are admissible for substantive as well as illustrative purposes.
[3] This case is readily distinguishable from cases in which this Court has concluded that the admission of a videotape constituted error. For example, in State v. Sibley, 140 N.C. App. 584, 586, 537 S.E.2d 835, 838 (2000), the State merely established "that the chain of custody had not been broken" and failed to "call any witnesses to testify that the camera was operating properly or that the information depicted on the videotape was an accurate representation of the events at the time of filming." Similarly, in State v. Mason, 144 N.C. App. 20, 26-27, 550 S.E.2d 10, 15-16 (2001), this Court found error, albeit of a non-prejudicial nature, when the State's witnesses explained that they did not know much about the operation of the camera, the State did not present evidence that there was any routine maintenance or testing of the surveillance camera system, no one testified that the videotape accurately depicted the critical events that occurred at the time of the robbery, and the chain of custody was not adequately established. Here, the record contains undisputed evidence tending to show that the videotape accurately depicted the events that occurred at the time that Officer Hodge procured the crack rock from Defendant.
[4] Although Defendant advances an alternative "plain error" claim in his brief, we need not address this contention given our conclusion that the trial court properly admitted the videotape into evidence. However, in the event that we were to reach Defendant's plain error argument, State v. Jones, 176 N.C. App. 678, 627 S.E.2d 265 (2006), would be determinative. In Jones, this Court stated that, "although the State established an unbroken chain of custody, it failed to present either evidence regarding the maintenance and operation of the recording equipment or testimony that the videotape accurately portrayed the robbery." Furthermore, the Court noted that the "defendant has not cited any case  and we have found none  in which our courts have found an inadequacy in the foundation for the admission of a videotape to constitute plain error." Jones, 176 N.C. App. at 683, 627 S.E.2d at 268. In reaching this conclusion, the Court reasoned that, "[b]ased upon our review of the record, it appears that if [the] defendant had made a timely objection, the State could have supplied the necessary foundation through testimony of the police officer . . . or other witnesses." Id. As a result, the Court concluded that, "[s]ince [the] defendant has made no showing that the foundational prerequisites, upon objection, could not have been supplied and has pointed to nothing suggesting that the videotape in this case is inaccurate or otherwise flawed, we decline to conclude the omissions discussed above amount to plain error." Jones, 176 N.C. App. at 684, 627 S.E.2d at 269. As we have already noted, Officer Hodge testified that the videotape had not been edited, and that the picture fairly and accurately recorded the actual appearance of the area photographed." Cannon, 92 N.C. App. at 254, 374 S.E.2d at 609 (quotations omitted). Officer Hodge also affirmed that the videotape had not been "changed, modified or altered in any way, form or fashion;" that "this video [was] part of the chain of custody of this matter;" and that "it [was] kept in the ordinary course of business of the agency[;]" this testimony was not challenged and provides some evidence of an adequate chain of custody. As a result, in the event that we were to reach the "plain error" issue, Jones would necessitate a conclusion that the admission of the videotape at issue here did not constitute plain error.